

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-12-2005

# Benn v. First Judicial Dist

Precedential or Non-Precedential: Precedential

Docket No. 01-3769

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Benn v. First Judicial Dist" (2005). *2005 Decisions.* Paper 300.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/300

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

Nos. 01-3769, 01-4012

————

DONALD BENN,
                                   Appellant

v.

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA;
CITY OF PHILADELPHIA;
BOARD OF PENSIONS AND RETIREMENT MUNICIPAL
PENSION FUND OF THE CITY OF PHILADELPHIA

————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 98-cv-05730)
District Judge: Honorable Eduardo C. Robreno

————

Submitted Under Third Circuit LAR 34.1(a)
September 16, 2005

Before:  SLOVITER, BARRY and SMITH, Circuit Judges

(Filed: October 12, 2005)

————

Ross Begelman
Begelman & Orlow
Cherry Hill, NJ  08034

        Attorney for Appellant

David M. Donaldson
Administrative Office of Pennsylvania Courts
Philadelphia, PA 19102

Attorney for Appellee

OPINION OF THE COURT

SLOVITER, Circuit Judge

Plaintiff Donald Benn, who had been a probation and parole officer for the First Judicial District of Pennsylvania ("Judicial District"),[1] brought suit against his former employer alleging violations of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. The District Court, by order dated September 6, 2001, granted summary judgment to the Judicial District. The District Court held that the Judicial District is a state agency and therefore is entitled to Eleventh Amendment immunity, a holding Benn vehemently opposes. The Judicial District states that "[t]he present case is an opportunity for this Court to finally issue a published precedent which holds that state courts have Eleventh Amendment immunity, in order to guide district courts and to quell repeated and unnecessary litigation of this issue." Appellee's Br. at 8.

We will proceed to consider that issue. Before we do so we must consider the Judicial District's contention that Benn's appeal was untimely.

---

[1] The Pennsylvania court system is divided into 60 judicial districts. See 42 Pa. Cons. Stat. Ann. § 901(a) (West 2005). The Judicial District is composed of the three courts that make up the Philadelphia County court system: the Court of Common Pleas (which includes a trial division, an orphans' court division, and a family court division); Municipal Court (which includes a civil division and a criminal division); and Traffic Court. See id. § 951 (Common Pleas), § 1121 (Municipal Court), § 1321 (Traffic Court).

# I.

## FACTS

Benn was employed by the Judicial District as a probation and parole officer from 1977 until 1997. Throughout most of that period he was engaged in clerical and administrative tasks. In 1996, he was transferred to work in the Enforcement Unit and was appointed a Special Deputy by the United States Marshals Office. It is apparent from the record that Benn was not pleased by the transfer. As his brief recites, in the new position he had to wear a firearm and a bullet-proof vest, use handcuffs, and locate and apprehend dangerous criminals. In his complaint, Benn alleges that "he was not mentally suited for this position" and, shortly after his transfer, began experiencing job-related anxiety and stress. App. at 19. He allegedly suffered post-traumatic shock after seeing a co-worker assaulted. In October 1996, he was accidentally struck by a car after seeing a probation violator on the street. He took leave from work for the next eight months, citing physical injuries from the accident, post-traumatic shock disorder, and chronic depression. Benn alleges that the Judicial District refused to offer any accommodation for his stress disorder, and that he was wrongfully terminated.

Benn filed a formal charge with the EEOC and received a right to sue letter on August 20, 1998. He filed suit in United States District Court for the Eastern District of Pennsylvania on October 29, 1998, claiming not only discrimination and retaliation in violation of the ADA but also violations of state law by the Judicial District, the City of Philadelphia, and the Board of Pensions and Retirement Municipal Pension Fund of the City of Philadelphia ("Board of Pensions").[2] After some activity in the District Court, the Judicial District filed a motion

---

[2] In its answer to the complaint, the Judicial District denied Benn's allegation that it failed to offer him accommodation, and denied Benn's allegation that he was wrongfully terminated. For purposes of this appeal, the Judicial District accepts Benn's alleged facts as true.

3

for summary judgment on September 27, 1999 on the ground of its entitlement to Eleventh Amendment immunity. That motion was granted by order of the District Court dated September 6, 2001 and entered on the docket on September 10, 2001.

## II.

## THE JURISDICTION ISSUE

On the same day that the District Court entered the summary judgment order, September 10, 2001, it also entered an order dismissing without prejudice defendant Board of Pensions and defendant City of Philadelphia. It is the coincidence of two orders on the same day in the same case that gives rise to the Judicial District's argument that we lack jurisdiction to consider the case because Benn did not file a proper, timely notice of appeal.

Rule 3 of the Federal Rules of Appellate Procedure requires that a notice of appeal "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). Rule 4 requires that the notice be filed "within 30 days after the judgment or order appealed from is entered." Fed. R. App. P. 4(a)(1)(A).

Benn filed a notice of appeal dated October 4, 2001 that reads, in full:

> Notice is hereby given that Plaintiff Donald Benn by and through his undersigned counsel hereby appeals to the United States Court of Appeals for the Third Circuit from the Order of the Honorable Eduardo C. Robreno, entered in the above captioned proceeding on the 6th day of September, 2001.

Pl.'s Notice of Appeal (emphasis added).

When Benn filed the October 4 Notice, which was admittedly timely, he mistakenly attached a copy of the order

4

dismissing the claims against the Board of Pensions and the City of Philadelphia, rather than a copy of the order entering summary judgment in favor of the Judicial District. When Benn recognized his mistake, he filed another notice of appeal dated October 22 which was intended to clarify that "[i]t was [his] intention to appeal the Order of September 6, 2001, issued regarding the [Judicial District]." Pl.'s Amended Notice of Appeal (emphasis added). If we regard the October 22, 2001 Notice of Appeal as the operative notice, the Judicial District would be correct that the appeal was untimely because filed outside the 30-day period prescribed by Rule 4.

Compliance with the Rules of Appellate Procedure for proper filing of a notice of appeal is "mandatory and jurisdictional." Lusardi v. Xerox Corp., 975 F.2d 964, 970 n.7 (3d Cir. 1992). A court may not waive the jurisdictional requirements of Rules 3 and 4, even for "good cause shown" under Rule 2. Torres v. Oakland Scavenger Co., 487 U.S. 312, 317 (1988). Benn argues that, because the Rules do not require an attachment of the order that is the subject of the appeal, we may and should disregard the copy of the incorrect order that he attached to the October 4 Notice. We approach the issue somewhat differently.

In Shea v. Smith, 966 F.2d 127, 129 (3d Cir. 1992), this court stated that we "liberally construe the requirements of Rule 3." Moreover, the Supreme Court has stated that even if a notice does not meet the letter of Rule 3, there is appellate jurisdiction if the appellant has filed a "functional equivalent" of a proper notice. Torres, 487 U.S. at 316-17; see also Shea, 966 F.2d at 130.

Although we have not previously been presented with a case precisely like this one, where the ambiguity in the notice of appeal arises from the District Court's issuance of two orders on the same day, we have sustained our jurisdiction in cases where the appellant's notice of appeal implicated two different orders in the same action and failed to specify the correct order appealed. See, e.g., Shea, 966 F.2d 127 (involving notice of appeal specifying order granting summary judgment in favor of

two defendants, when appeal was actually also intended from prior order granting summary judgment in favor of a third defendant); CTC Imports & Exports v. Nigerian Petroleum Corp., 951 F.2d 573 (3d Cir. 1991) (involving notice of appeal specifying order granting summary judgment in favor of another party in the case, when appeal was actually intended from prior order imposing sanctions on appellant); Gooding v. Warner-Lambert Co., 744 F.2d 354 (3d Cir. 1984) (involving notice of appeal specifying order granting summary judgment on one claim, when appeal was actually also intended from prior order dismissing another claim in the case). For all intents and purposes, the defect in Benn's October 4 Notice was a failure to specify the correct order that was being appealed.

We have held that a notice may be construed as bringing up an unspecified order for review if it appears from the notice of appeal itself and the subsequent proceedings on appeal that the appeal was intended to have been taken from the unspecified judgment, order, or part thereof. See Elfman Motors, Inc. v. Chrysler Corp., 567 F.2d 1252, 1254 (3d Cir. 1977) (citing Foman v. Davis, 371 U.S. 178 (1962)). To determine whether appellate jurisdiction vests over an order that is not specified in the notice of appeal, we consider in particular whether there is a connection between the specified and unspecified orders, whether the intention to appeal the unspecified order is apparent, whether the opposing party was prejudiced by the appellant's failure to specify the correct order, and whether the opposing party has had a full opportunity to brief the issues. Shea, 966 F.2d at 129 (citing Williams v. Guzzardi, 875 F.2d 46, 49 (3d Cir. 1989)).

In Benn's case, treating the order attached to the complaint as the specified order and the order Benn sought to appeal as the unspecified order, it is apparent that both orders were connected in that they were dispositive of the same case and issued on the same day, albeit as to different parties. The Judicial District had notice of Benn's intention to appeal the grant of summary judgment in a telephone conference held with the District Court on September 6, 2001, the day on which the relevant orders were issued. Indeed, the Judicial District does

6

not dispute that it had notice of Benn's intention to appeal the grant of summary judgment, nor does it argue that it was in any way prejudiced by the defective October 4 Notice. Nor could it so argue realistically, as Benn's mistake was caught and corrected in time to afford the Judicial District a full and fair opportunity to brief the issues, including the adequacy of the notice, which it has done. The October 4 Notice of Appeal, albeit imperfect, constitutes the "functional equivalent" of a proper notice, and it is therefore sufficient to vest us with jurisdiction to decide the question of the Judicial District's immunity. We reject the Judicial District's contention to the contrary.

## III.

## ELEVENTH AMENDMENT IMMUNITY

We thus turn to consider the central question in this case - whether the Judicial District is an instrumentality of the Commonwealth of Pennsylvania entitled to immunity under the Eleventh Amendment from a suit for damages brought by a former employee pursuant to the ADA. Our review of the District Court's grant of summary judgment is de novo, Union Pacific R.R. Co. v. Greentree Transp. Trucking Co., 293 F.3d 120, 125 (3d Cir. 2002), particularly because in this case the issue is a legal one.

It is too late in the jurisprudence of the Eleventh Amendment for this court (and perhaps even for the Supreme Court) to interpret that Amendment in light of its explicit language as applicable only to suits against a state brought by citizens of another state. The Supreme Court has consistently held that the Eleventh Amendment immunizes an unconsenting state from suits brought in federal court by its own citizens as well as by citizens of another state. See e.g., Hans v. Louisiana, 134 U.S. 1 (1890); Seminole Tribe of Fla. v. Florida, 517 U.S. 44 (1996). Congress may abrogate the States' Eleventh Amendment immunity pursuant to its authority under § 5 of the Fourteenth Amendment provided it has unequivocally expressed its intent to do so. See Kimel v. Fla. Bd. of Regents, 528 U.S.

7

62, 73-74, 79 (2000); <u>College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.</u>, 527 U.S. 666, 670 (1999).

Because Benn's action invokes Title I of the ADA, his claim is governed by <u>Board of Trustees of the University of Alabama v. Garrett</u>, 531 U.S. 356 (2001). Even when Congress' intent to abrogate the States' Eleventh Amendment immunity is beyond dispute, as the Supreme Court conceded it was in Title I of the ADA,[3] the Supreme Court may hold, as it did in <u>Garrett</u>, <u>id.</u> at 363, that Congress did not act pursuant to a valid grant of constitutional authority.[4] It follows that Pennsylvania, if sued under Title I, retains its Eleventh Amendment immunity.

Moreover, a suit may be barred by the Eleventh Amendment even though a state is not named a party to the action, so long as the state is deemed to be the real party in interest. <u>Regents of the Univ. of Cal. v. Doe</u>, 519 U.S. 425, 429 (1997); <u>Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974); <u>Fitchik v. N.J. Transit Rail Operations, Inc.</u>, 873 F.2d 655, 659 (3d Cir.

---

[3] In <u>Garrett</u>, the Court considered only Title I, the Title at issue here. The Court expressly reserved the issue of abrogation of Title II of the ADA, dealing with the "services, programs, and activities of a public entity." 42 U.S.C. § 12132. In <u>Tennessee v. Lane</u>, 541 U.S. 509 (2004), the Court held that the plaintiff could maintain an action under Title II of the ADA against the state for its failure to provide access to judicial proceedings for disabled parties. Presently pending before the Court is the question of whether the immunity of the state has been abrogated for a suit under Title II by a disabled state prisoner. <u>Goodman v. Ray</u>, 120 Fed. Appx. 785 (11th Cir. 2004), <u>cert.</u> <u>granted</u> <u>sub</u> <u>nom.</u> <u>United States v. Georgia</u>, 73 U.S.L.W. 3671 (U.S. May 16, 2005) (No. 04-1203), <u>and</u> <u>Goodman v. Georgia</u>, 73 U.S.L.W. 3671 (U.S. May 16, 2005) (No. 04-1236).

[4] In 42 U.S.C. § 12202, Congress provides: "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter."

1989).  This court, in a series of cases, held that various Pennsylvania agencies and entities are entitled to Eleventh Amendment immunity even though the state itself has not been named as a defendant.  See, e.g., Sacred Heart Hosp. v. Dep't of Pub. Welfare, 133 F.3d 237 (3d Cir. 1998) (Pennsylvania Department of Public Welfare); Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690 (3d Cir. 1996) (Pennsylvania Department of Labor and Industry); Skehan v. State Sys. of Higher Educ., 815 F.2d 244 (3d Cir. 1987) (state university system); Allegheny County Sanitary Auth. v. EPA, 732 F.2d 1167 (3d Cir. 1984) (Pennsylvania Department of Environmental Resources); Daye v. Pennsylvania, 483 F.2d 294 (3d Cir. 1973) (Pennsylvania Department of Transportation).

We broached but did not decide the issue of the Judicial District's Eleventh Amendment immunity in Callahan v. City of Philadelphia, 207 F.3d 668 (3d Cir. 2000), where we dismissed a suit under 28 U.S.C. § 1983 against, among other defendants, the Judicial District on the ground that it is not a "person" within the meaning of that statute.  Id. at 673.  In that case we assessed the Judicial District's relationship to the state by applying the factors we had enumerated in our earlier decision in Fitchik, 873 F.2d at 655.

In Fitchik, we held that to determine whether a suit against an entity is actually a suit against the state itself, we must consider: (1) the source of the money that would pay the judgment (i.e., whether that source would be the state); (2) the status of the entity under state law; and (3) the degree of autonomy the entity has.  Id. at 659 (distilling to three larger questions the numerous factors set forth in Urbano v. Board of Managers, 415 F.2d 247 (3d Cir. 1969)).  Although none of the three factors alone is dispositive, in Fitchik we stated that the first is the most important.  Fitchik, 873 F.2d at 659.

The Judicial District argues that following the decision by the Supreme Court in Doe, 519 U.S. at 425, we can no longer ascribe primacy to the first factor.  We agree.  In Doe, the Court made clear that the relevant inquiry is not merely a "formalistic

9

question of ultimate financial liability." Id. at 431. Instead, the relevant inquiry is "the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in the first instance." Id.   In a decision that followed Doe, the Supreme Court explained that "[w]hile state sovereign immunity serves the important function of shielding state treasuries . . . the doctrine's central purpose is to accord the States the respect owed them as joint sovereigns." Fed. Mar. Comm'n v. S. C. State Ports Auth., 535 U.S. 743, 765 (2002) (internal citation and quotation omitted). We have recently interpreted this purpose to entail nothing less than "protect[ing] against the indignity of any kind of suit whatsoever." Hampe v. Butler, 364 F.3d 90, 97 (3d Cir. 2004).

The relegation of financial liability to the status of one factor co-equal with others in the immunity analysis does not mean that it is to be ignored.  Like the other two factors referred to in Fitchik, it is simply to be considered as an indicator of the relationship between the State and the entity at issue.  See Doe, 519 U.S. at 430-31.  In granting summary judgment for the Judicial District in this case, the District Court looked to all three Fitchik factors.

In Callahan, we thoroughly analyzed the second and third Fitchik factors as applied to the District, stating:

> [t]he Pennsylvania constitution provides for the vesting of the Commonwealth's judicial power in a "unified judicial system" which includes all of the courts in Pennsylvania. Pa. Const. art. V, § 1. Moreover, the constitution provides that the Pennsylvania Supreme Court will exercise "general supervisory and administrative authority" over the unified judicial system. Pa. Const. art. V, §§ 1, 2, and 10. All courts and agencies of the unified judicial system, including the Philadelphia Municipal Court, are part of "Commonwealth government" and thus are state rather than local agencies. See Pa. Const. art. V, § 6(c); 42 Pa. Cons. Stat. Ann. § 102 (West Supp. 1999); 42 Pa.

10

Cons. Stat. § 301 (West 1981).

Callahan, 207 F.3d at 672.

We concluded that "[t]he authorities we have reviewed make it perfectly clear that the judicial defendants are not independent of the Commonwealth and hardly can be regarded as having significant autonomy from the Pennsylvania Supreme Court. They are part of the unified judicial system subject to the control of the Supreme Court." Id. at 673. Benn has made no arguments that alter our analysis, and we therefore conclude that the Fitchik factors strongly favor Eleventh Amendment immunity for the District.

Benn recognizes that neither cities nor counties partake of Pennsylvania's Eleventh Amendment immunity. He thus argues that the District is "merely a local entity undeserving of the protection of the Eleventh Amendment," Appellant's Br. at 8, and notes that his paycheck was issued by the City of Philadelphia; the union to which he belonged negotiated its contracts with the City; he was required to live within Philadelphia city limits; and the car he was given for work assignments was owned by the City, id. at 17. We noted in Callahan that the statutory funding scheme for state courts places considerable financial responsibility for the operation of the courts onto the counties. Callahan, 207 F.3d at 670-71. In fact, the Supreme Court of Pennsylvania has held that the bifurcated funding scheme prescribed by the General Assembly is "in conflict with the intent clearly expressed in the constitution that the judicial system be unified." County of Allegheny v. Commonwealth, 534 A.2d 760, 765 (Pa. 1987).

What is significant in County of Allegheny, for the issue before us, is that under the Pennsylvania Supreme Court's interpretation of the state constitution, the Judicial District and its counterparts are state entities. That they are locally funded may be problematic for a variety of reasons, but it does not transform them into local entities for Eleventh Amendment purposes.

11

Nor is it decisive of the Judicial District's entitlement to immunity that the City may have an agreement for indemnification with the Judicial District, as Benn asserts. That question was decisively answered by the Supreme Court in Doe, where the Court stated, "[t]he Eleventh Amendment protects the State from the risk of adverse judgments even though the State may be indemnified by a third party." Doe, 519 U.S. at 431. The Pennsylvania constitution envisions a unified state judicial system, of which the Judicial District is an integral component. From a holistic analysis of the Judicial District's relationship with the state, it is undeniable that Pennsylvania is the real party in interest in Benn's suit and would be subjected to both indignity and an impermissible risk of legal liability if the suit were allowed to proceed. We agree with the District Court that the Judicial District has Eleventh Amendment immunity which functions as an absolute bar to Benn's ADA claim. We therefore will affirm the order granting summary judgment.

_____

12