Errol DAVIS, Appellant

v.

SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION
AUTHORITY.

Marjorie Goldman

v.

Southeastern Pennsylvania
Transportation
Authority.

Edmund Wiza

v.

Southeastern Pennsylvania
Transportation
Authority.

Michael J. Maguire

v.

Southeastern Pennsylvania
Transportation
Authority.

Appeal of: Southeastern Pennsylvania
Transportation Authority.

Commonwealth Court of Pennsylvania.

Argued June 10, 2009.
Decided Aug. 10, 2009.

Lawrence A. Katz, Bala Cynwyd, for appellant, Errol Davis and appellee, Marjorie Goldman.

Nicholas J. Staffieri, Carl D. Buchholz, III, and Dolores Rocco Kulp, Philadelphia, for Southeastern Pennsylvania Transportation Authority.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge,[1] PELLEGRINI, Judge, COHN JUBELIRER, Judge, LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge BUTLER.

The Southeastern Pennsylvania Transportation Authority (SEPTA) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) denying SEPTA's motion for summary judgment based upon a claim of sovereign immunity and granting the partial summary judgment motion filed by Marjorie Goldman, Edmund Wiza, and Michael J. Maguire (collectively Goldman) requesting the dismissal of SEPTA's affirmative defenses under the Eleventh Amendment, sovereign immunity, governmental immunity, and any other similar defenses. In addition, Errol Davis (Davis) appeals from an order of the trial court granting a motion for summary judgment filed by SEPTA. Both appeals present the same issue before this Court: whether the Commonwealth's sovereign immunity applies to SEPTA in claims brought in Pennsylvania courts under the Federal Employers' Liability Act (FELA).[2] For reasons that follow, we reverse the trial court in *Goldman v. SEPTA,* and affirm the trial court in *Davis v. SEPTA.* We now hold that the sovereign immunity of the Commonwealth of Pennsylvania does indeed encompass SEPTA where claims are brought under FELA in the courts of this Commonwealth.

Marjorie Goldman, Edmund Wiza, and Michael J. Maguire filed individual complaints against SEPTA for injuries sustained as a result of their employment with SEPTA. In each case SEPTA filed a motion for judgment on the pleadings on the basis of sovereign immunity. The trial court consolidated the cases for the purpose of determining the sovereign immunity issue.

On January 24, 2008, an evidentiary hearing was held and the trial court denied SEPTA's motion for judgment on the pleadings. On July 31, 2008, SEPTA and Goldman filed cross motions for summary judgment addressing whether sovereign immunity applied to SEPTA in FELA claims. On December 24, 2008, the trial court denied SEPTA's motion for summary judgment and granted the partial summary judgment motion filed by Goldman requesting the dismissal of SEPTA's affirmative defenses under the Eleventh Amendment, sovereign immunity, governmental immunity, and any other similar defenses.

On January 22, 2009, the trial court granted SEPTA's motion to certify the December 24, 2008 order. On March 9, 2009, this Court granted SEPTA permission to appeal, and further ordered the appeal would be argued seriately with *Davis v. SEPTA.*

Errol Davis filed a complaint against SEPTA for injuries sustained as a result of his employment with SEPTA. Prior to trial, SEPTA filed a motion for summary judgment on the basis of sovereign immunity which was denied. Immediately prior to Davis' jury trial, SEPTA made another motion for summary judgment on the basis of sovereign immunity before the trial court, which the trial court did not ad-

---

**1.** The decision in this case was reached before the conclusion of Judge Smith–Ribner's service.

**2.** 45 U.S.C. §§ 51–60.

dress. The trial resulted in a jury verdict for Davis in the amount of $740,000.00. SEPTA filed a motion for a new trial on the basis of the trial court's failure to address the motion pertaining to sovereign immunity, which the trial court granted. Davis appealed that order to this Court.

On April 21, 2008, this Court vacated the trial court's order and remanded the case to the trial court for further findings and conclusions with respect to the motion for summary judgment on the basis of sovereign immunity. On January 8, 2009, the trial court granted SEPTA's motion for summary judgment on the basis of sovereign immunity and entered judgment in favor of SEPTA. Davis appealed that order to this Court.[3]

Goldman argues that SEPTA does not enjoy the Commonwealth's sovereign immunity in FELA claims because SEPTA is not an arm of the State under the Eleventh Amendment. SEPTA argues that under *Alden v. Maine (Alden)*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), an Eleventh Amendment analysis is not in order because the United States Supreme Court has ruled that Congress does not have the constitutional power to preempt the application of state law in legislation such as FELA, which is founded upon the Commerce Clause of the U.S. Constitution.[4] Thus, such legislation does not preempt the state law that defines

which entities are to be considered sovereign and the sovereign immunity granted to those entities. SEPTA contends that under Pennsylvania law, SEPTA is clearly entitled to sovereign immunity. We agree that under Pennsylvania Law, SEPTA is protected by the Commonwealth's sovereign immunity.

In *Alden,* after noting its prior holding in *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), that "Congress lacks power under Article I [of the U.S. Constitution] to abrogate the States' sovereign immunity from suits commenced or prosecuted in the *federal* courts[,]" the Supreme Court of the United States further held, "that the powers delegated to Congress under Article I ... [also] do not include the power to subject nonconsenting States to private suits for damages in *state* courts." *Alden,* 527 U.S. at 712, 119 S.Ct. 2240 (emphasis added). In so holding, the Court noted:

> Congress has vast power but not all power. When Congress legislates in matters affecting the States, it may not treat these sovereign entities as mere prefectures or corporations. Congress must accord States the esteem due to them as joint participants in a federal system, one beginning with the premise of sovereignty in both the central Government and the separate States. Congress has ample means to ensure com-

---

**3.** "On appeal, in reviewing the trial court's grant of summary judgment, we are limited to determining whether the trial court committed an error of law or abused its discretion. Summary judgment is appropriate only when, after examining the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Guy M. Cooper, Inc. v. E. Penn Sch. Dist.,* 903 A.2d 608, 612–13 (Pa.Cmwlth.2006) (citation omitted). The appellate standard of review is de novo when a reviewing court considers questions of law. *Weaver v. Lancas-*

*ter Newspapers, Inc.,* 592 Pa. 458, 926 A.2d 899 (2007). In reviewing questions of law, the scope of review is plenary, as the reviewing court may examine the entire contents of the record. *Id.*

**4.** U.S. Const. art. I, § 8, cl. 3 (Congress shall have power: "To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes"). · Congress enacted FELA under its Commerce Clause powers. *Collins v. State of Alaska,* 823 F.2d 329 (9th Cir.1987).

pliance with valid federal laws, but it must respect the sovereignty of the States.

*Id.* at 758, 119 S.Ct. 2240. Accordingly, the Court held that the State of Maine was not subject to suit under the Fair Labor Standards Act of 1938[5] in its own courts in light of Maine's sovereign immunity.

It is important to note for our purposes here, that there is no distinction between "Eleventh Amendment Immunity" and State sovereign immunity. The phrase is actually a misnomer as, "the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Id.* at 713, 119 S.Ct. 2240. The Eleventh Amendment simply states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens . . . ." U.S. Const. amend. XI. However, the immunity of a State, specifically the immunity of this Commonwealth, "is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they [generally] retain today . . . ." *Alden,* 527 U.S. at 713, 119 S.Ct. 2240. And, as conceded by the U.S. Supreme Court in *Alden,* this sovereign immunity extends to subordinate entities to the extent that such entity is "an arm of the State." *Id.* at 756, 119 S.Ct. 2240.

Correspondingly, in *Hess v. Port Auth. Trans–Hudson Corp.,* the U.S. Supreme Court intimated that a State's immunity extends to agencies of the State when that State purposely structures the agency to enable it to enjoy the State's immunity.

513 U.S. 30, 43–44, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994). The Court noted its general approach of presuming that agencies do not qualify for Eleventh Amendment immunity: " '[u]nless there is good reason to believe that the State[ ] structured the new agency to enable it to enjoy the special constitutional protection of the State[ itself] . . . .' " *Hess,* 513 U.S. at 43–44, 115 S.Ct. 394 (quoting *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979)) (emphasis added).[6] Where an agency is formed pursuant to the sovereign power of a single State, subordinate agencies *may* enjoy the special constitutional protection of the State itself whenever the State intentionally and expressly structures an agency to enable it to enjoy the State's constitutional protection. That is precisely the nature of the matter now before us, as we are called upon to determine whether SEPTA enjoys the Commonwealth's immunity from suit pursuant to FELA in the courts of this Commonwealth.

It is critical to note that SEPTA has a unique enabling statute which explicitly establishes SEPTA as a Commonwealth party which enjoys the Commonwealth's sovereign immunity. Specifically, Section 1711 of the Metropolitan Transportation Authorities Act[7] (Act), states in pertinent part: "An authority shall in no way be deemed to be an instrumentality of any city or county or other municipality or engaged in the performance of a municipal function, but shall exercise the public powers of the Commonwealth *as an agency and instrumentality thereof.*" 74 Pa.C.S.

---

**5.** 29 U.S.C. §§ 201–219.

**6.** *Hess* was a case involving the Compact Clause of the U.S. Constitution, Article I, § 10, cl. 3, which generally provides that no State shall enter into any agreement or compact with another State without the consent of Congress. Because the Compact Clause is not implicated in this matter, congressional consent is not relevant here.

**7.** 74 Pa.C.S. §§ 1701–1785.

§ 1711(a) (emphasis added). The Act further states:

> It is hereby declared to be *the intent of the General Assembly that an authority created or existing under this chapter ... shall continue to enjoy sovereign and official immunity,* as provided in 1 Pa.C.S. § 2310 (relating to sovereign immunity reaffirmed; specific waiver), and shall remain immune from suit except as provided by and subject to the provision of 42 Pa.C.S. §§ 8501 (relating to definitions) through 8528 (relating to limitations on damages).

74 Pa.C.S. § 1711(c)(3) (emphasis added).

Without question, the Commonwealth of Pennsylvania holds considerable interest in ensuring that SEPTA has the Commonwealth's constitutional protection as an arm of the Commonwealth. SEPTA's enabling statute provides that SEPTA:

> shall exercise the public powers of the Commonwealth as an agency and instrumentality thereof [and] shall exist for the purpose of planning, acquiring, holding, constructing, improving, maintaining, operating ... and otherwise functioning with respect to a transportation system....

74 Pa.C.S. § 1711(a) (emphasis added). This transportation system is purposed to operate for the benefit of citizens of the Commonwealth and ultimately the Commonwealth itself, as SEPTA is the Commonwealth's Authority providing public transportation in and around the Commonwealth's largest metropolitan area. We have no doubt that SEPTA plays a substantial role in providing transportation for the area's workforce, to and from their various places of employment, thus contributing substantially to the generation of the Commonwealth's revenue. Consistently, in carrying out its functions, SEPTA wields the power of eminent domain "to acquire private property and property devoted to any public use which is necessary for the purposes of the authority...." 74 Pa.C.S. § 1744(b)(1). The power of eminent domain itself is indicative of government function. The broad responsibility of the Authority, and the extensive powers granted by the Commonwealth to effectuate its function, clearly evidence SEPTA's status in operating as an arm of the Commonwealth. Thus, an examination of SEPTA's unique enabling legislation along with execution thereof unquestionably reveals the intent of the General Assembly to give SEPTA the constitutional protection of the Commonwealth.

Further, the Commonwealth itself provides funding for SEPTA in amounts totaling over three quarters of a billion dollars per year, over 50% of SEPTA's operating and capital budgets. Specifically, money received and money budgeted to be received by SEPTA from the Commonwealth under the Act is as follows:

| Fiscal Year | Combined Operating and Capital Budgets | State Subsidy | Percentage of total Combined Budgets |
| --- | --- | --- | --- |
| 2010 | $1,549,844,000.00 | $793,064,000.00 | 51.1% |
| 2009 | $1,447,574,000.00 | $730,036,000.00 | 50.4% |
| 2008 | $1,448,376,000.00 | $696,796,000.00 | 48.1% |

Exhibit A to the Application for Leave to File an Affidavit, granted by order dated June 19, 2009.

Fittingly, this Court has long held, and continues to hold, that SEPTA is a Commonwealth party which enjoys immunity from suit under Section 8521 of the Judicial Code, 42 Pa.C.S. § 8521. *See Southeastern Pennsylvania Transp. Auth. v.*

*Holmes,* 835 A.2d 851 (Pa.Cmwlth.2003); *Warnecki v. Southeastern Pennsylvania Transp. Auth.,* 689 A.2d 1023 (Pa.Cmwlth. 1997); *Chambers v. Southeastern Pennsylvania Transp. Auth.,* 128 Pa.Cmwlth. 368, 563 A.2d 603 (1989).

In this Commonwealth, sovereign immunity is only waived as a bar to suit against a Commonwealth party "for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity" in the specific instances enumerated as exceptions to the statute. 42 Pa.C.S. § 8522(a). As such, we are now called to examine whether FELA claims fall within any of the exceptions under Section 8522(b) of the Judicial Code, 42 Pa.C.S. § 8522(b).

Section 8522(b) provides in pertinent part:

**(b) Acts which may impose liability.—** The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

(1) **Vehicle liability.**—The operation of any motor vehicle in the possession or control of a Commonwealth party. As used in this paragraph, "motor vehicle" means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

(2) **Medical-professional liability.**— Acts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel.

(3) **Care, custody or control of personal property.**—The care, custody or control of personal property in the possession or control of Commonwealth parties, including Commonwealth-owned personal property and property of persons held by a Commonwealth agency. . . .

(4) **Commonwealth real estate, highways and sidewalks.**—A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency. . . .

(5) **Potholes and other dangerous conditions.**—A dangerous condition of highways under the jurisdiction of a Commonwealth agency created by potholes or sinkholes or other similar conditions created by natural elements. . . .

(6) **Care, custody or control of animals.**—The care, custody or control of animals in the possession or control of a Commonwealth party, including but not limited to police dogs and horses and animals incarcerated in Commonwealth agency laboratories. . . .

(7) **Liquor store sales.**—The sale of liquor at Pennsylvania liquor stores by employees of the Pennsylvania Liquor Control Board . . . if such sale is made to any minor, or to any person visibly intoxicated, or to any insane person, or to any person known as an habitual drunkard, or of known intemperate habit.

(8) **National Guard activities.**—Acts of a member of the Pennsylvania military forces.

(9) **Toxoids and vaccines.**—The administration, manufacture and use of a

toxoid or vaccine not manufactured in this Commonwealth. . . .

FELA claims simply do not fall under any of the exceptions listed at 42 Pa.C.S. § 8522(b). Accordingly, we hold that under Pennsylvania's sovereign immunity statute, SEPTA is immune from FELA claims.

We are aware that in *Cooper v. Southeastern Pennsylvania Transp. Auth.*, 548 F.3d 296 (3d Cir.2008), the United States Court of Appeals for the Third Circuit found, under the circumstances then before it, that SEPTA is not an "arm of the State" and, therefore, does not have Eleventh Amendment immunity from liability in federal courts under the Fair Labor Standards Act.[8] This Court is of the opinion that the Third Circuit Court of Appeals failed to grant legislative intent, as indicated by SEPTA's enabling statute, the full weight it deserves. Clearly, the Commonwealth regards SEPTA as a Commonwealth agency for purposes of sovereign immunity. The *Hess* case is instructive as "there is good reason to believe that the State[ ] structured the ... agency to enable it to enjoy the special constitutional protection of the State[ ]." 513 U.S. at 43–44, 115 S.Ct. 394.

In addition, while the court in *Cooper* conducted a factor analysis[9] pursuant to federal jurisprudence to determine whether it would opine that SEPTA was an arm of the State, the court found that SEPTA fell short of being an arm of the state with respect to the "autonomy" factor under the *then current* funding mechanisms. That court specifically stated, however:

Should the percentage of SEPTA's funding provided by the Commonwealth increase, the Commonwealth's potential influence over SEPTA would also increase under the terms and conditions it may choose to impose on those funds. But, as previously noted, we are presently unable to forecast whether and to what extent such an increase may occur under Act 44.

*Cooper*, 548 F.3d at 310. The percentage of SEPTA's funding provided by the Commonwealth has in fact increased. The court in *Cooper* was using 2007 figures, estimating that as much as two-thirds of SEPTA's funding came from sources other than the Commonwealth. As explained above, that is no longer the case. In 2010 less than half of SEPTA's funding will come from non-Commonwealth sources. SEPTA's current budget calls for over three quarters of a billion dollars per year in Commonwealth funding. Thus, *Cooper* is distinguished from the instant matter on a factual basis, and is neither applicable nor controlling in resolving this case.

This Court is of the opinion that SEPTA is entitled to the Commonwealth's immunity as an arm of this Commonwealth. As respecting lawsuits filed in the courts of this Commonwealth, we hold that SEPTA is not subject to suit under FELA. SEPTA retains the Commonwealth's protection of sovereign immunity as intended by the General Assembly.

For these reasons, the order of the trial court in *Goldman v. SEPTA* is reversed, and the order of the trial court in *Davis v. SEPTA* is affirmed.

---

**8.** Cited in *Cooper* as 29 U.S.C. § 207(a).

**9.** In summary, the three factors utilized were: (1) the effect that lawsuits against the agency might have upon the State treasury, (2) the agency's status under state law, and (3) the agency's autonomy with respect to the State. *Cooper*, 548 F.3d at 299.

## ORDER

AND NOW, this 10th day of August, 2009, the January 8, 2009 order of the Court of Common Pleas of Philadelphia County is hereby affirmed.

## ORDER

AND NOW, this 10th day of August, 2009, the December 24, 2008 order of the Court of Common Pleas of Philadelphia County is hereby reversed.

## DISSENTING OPINION BY Judge PELLEGRINI.

The issue in this appeal is whether the Southeastern Pennsylvania Transportation Authority (SEPTA) is an "arm of the state" enjoying Eleventh Amendment immunity from liability under the Federal Employers' Liability Act (FELA).[1] Coming to a different conclusion than does the United States Court of Appeals for the Third Circuit, the majority finds that SEPTA is entitled to Eleventh Amendment immunity. It does so because, like all authorities in Pennsylvania, even those created mainly by local governments for purely local purposes, it is denominated as an "instrumentality of the Commonwealth;" it is governed by provisions of the Sovereign Immunity Act, rather than what is commonly known as the Political Subdivision Torts Claim Act that governs non-commonwealth agencies; and it receives significant funding from the Commonwealth in carrying out its activities. Because I disagree with the majority's holding that SEPTA is an arm of the state

entitled to Eleventh Amendment immunity, I respectfully dissent.

### I.

The Eleventh Amendment provides that: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy,* 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993). ("The Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity.")[2]

The Eleventh Amendment is also available to certain state entities even when the state is not a named party so long as the state is the real party in interest. Whether an entity is entitled to Eleventh Amendment immunity is determined by whether its relationship with the state effectively makes it an "arm of the state." *Regents of the University of California v. Doe,* 519 U.S. 425, 429–430, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997) (*quoting Mt. Healthy City School Dist, Bd. of Educ. v. Doyle,* 429 U.S. 274 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). An important factor used to determine whether an "entity is the arm of the state" is whether any potential money judgment would or would not come from the state treasury. In *Hess v. Port Authority Trans–Hudson Corporation,* 513 U.S. 30, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994), the Supreme Court held that the

---

1. For an analysis of FELA's and SEPTA's history, see the thorough and well written opinion of the Honorable Nitza Quinones Alejandro, dated December 24, 2008.

2. Congress can abrogate states' immunity from suit when: (1) Congress has "unequivocally" expressed the "intent" to abrogate im-

munity and (2) Congress is acting "pursuant to a valid exercise of power." *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). There is no allegation that Congress has abrogated Eleventh Amendment immunity from actions brought against the state under FELA.

port authority, an entity created by a bi-state compact, was not entitled to Eleventh Amendment immunity as an "arm of the state" because neither state would be "legally" or "practically" liable for a possible money judgment awarded to two injured railway workers. Moreover, "with respect to the underlying Eleventh Amendment question, it is the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant." *Doe,* 519 U.S. 425, 429–430, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997).

However, even though the Eleventh Amendment and state sovereign immunity serves to shield the state treasury, "With regard to Eleventh Immunity, [w]hile state sovereign immunity serves the important function of shielding state treasuries ... the [Eleventh Amendment] doctrine's central purpose is to accord the states the respect owed to them as joint sovereigns." *Federal Maritime Commission v. South Carolina State Ports Authority,* 535 U.S. 743, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002). If SEPTA is an "arm of the state," it would be immune; if not, it would continue to be subject to actions brought under FELA.

Each federal circuit court of appeals has adopted a slightly different test to determine whether an entity is an "arm of the state" to determine whether Eleventh Amendment immunity is available.[3] Because FELA actions can be brought in either federal or state courts, 45 U.S.C. § 56, it is particularly appropriate to examine how the Third Circuit confers Eleventh Amendment immunity on SEPTA. If

we are at odds with the Third Circuit, the net result will be that plaintiffs will bring their actions in federal court.

## II.

To determine whether an entity enjoys Eleventh Amendment immunity, the Third Circuit adopted a three-factor test in *Fitchik v. N.J. Transit Rail Operations,* 873 F.2d 655, 659 (3d Cir.1989). The three "*Fitchik* factors" are:

(1) Whether the money that would pay the judgment would come from the state (whether payment will come from the state's treasury, whether the agency has the money to satisfy the judgment, and whether the sovereign has immunized itself from responsibility for the agency's debts);

(2) The status of the agency under state law (whether the entity is separately incorporated, whether the agency can sue or be sued in its own right, and whether it is immune from state taxation); and

(3) What degree of autonomy the agency has.

In applying the *Fitchik* test, the Third Circuit noted that while none of the factors were dispositive, the "most important" was "whether any judgment would be paid from the state treasury." *Id.* at 659–660. However, as a result of the Supreme Court decision in *Doe* and *Federal Maritime Commission,* the Third Circuit stated that it would "no longer ascribe primacy to the [state-treasury] factor" and now gave equal weight to each of the three *Fitchik* factors. *Benn v. First Judicial Dist. of Pa.,* 426 F.3d 233, 239 (3d Cir.2005).

---

**3.** Analisa Dillingham, REACHING FOR IMMUNITY: THE THIRD CIRCUIT'S APPROACH TO THE EXTENSION OF ELEVENTH AMENDMENT IMMUNITY TO INSTRUMENTALITIES AS ARMS OF THE STATE IN BENN V. FIRST JUDICIAL DISTRICT OF PENNSYLVANIA, 51 Villa. L.Rev. 999 (2006). This excellent article compares the Third Circuit and the other federal circuits' approaches to determining whether Eleventh Amendment immunity applies.

(Courts of Common Pleas were entitled to Eleventh Amendment immunity even when acting in an administrative capacity because they acted as "arms of the state.") *See also Febres v. Camden Board of Education,* 445 F.3d 227 (3d Cir.2006). (School board was not an "arm of the state").

The Third Circuit examined whether SEPTA was an arm of the state entitled to Eleventh Amendment immunity in *Bolden v. SEPTA,* 953 F.2d 807 (3d Cir.1991) (en banc), *cert. denied,* 504 U.S. 943, 112 S.Ct. 2281, 119 L.Ed.2d 206 (1992) and, more recently, in *Cooper v. SEPTA,* 548 F.3d 296, 299 (3d Cir.2008), *cert. denied,* —— U.S. ——, 129 S.Ct. 2736, 174 L.Ed.2d 247 (2009). In each instance, the Third Circuit found that SEPTA was not an arm of the state and was not entitled to Eleventh Amendment immunity.

*Cooper* involved the same issue that is at issue here—whether SEPTA was entitled to Eleventh Amendment immunity under the "arm of the state," *albeit* under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 207(a). Because there were changes since *Bolden* was decided in Eleventh Amendment jurisprudence and its state funding formula, *Cooper* reexamined whether *Bolden's* conclusion that SEPTA was an arm of the state for Eleventh Amendment immunity was still good law. After reviewing *Bolden* and subsequent case law, Chief Judge Scirica, writing for the court, examined each of the *Fitchik* factors.

### A.

Regarding the first *Fitchik* factor, *Cooper* found that the relevant criteria under

the state-treasury factor weighed against a finding of Eleventh Amendment immunity. Since the United States Supreme Court's decision in *Doe,* the Third Circuit stated that no matter what percentage of the agency budget the state paid, the determinative factor was whether the state treasury was legally responsible for the payment of a judgment against the entity. It went on to note that in *Febres,* it found that even though the Camden Board of Education received 85% to 90% of its funding from New Jersey, "the fact that New Jersey is the principal source of the Board's finances does not alone confer immunity, or even compel a finding that this prong of the analysis favors immunity." *Cooper* at 303–304, *quoting* from *Febres,* 445 F.3d at 232–233. Because under 74 Pa.C.S. § 1741(c)[4] the Commonwealth was not liable for SEPTA's debts, it found that the state treasury would not be at risk if a judgment was entered against SEPTA on the FELA claim.

### B.

In its analysis of the second *Fitchik* factor—[t]he status of the agency under state law, the Third Circuit in *Cooper* found that SEPTA's status under state law weighed slightly in favor of a finding of immunity. It reiterated that factors to consider in making that determination included "how state law treats the agency generally, whether the entity is separately incorporated, whether the agency can sue or be sued in its own right, and whether it is immune from state taxation." *Fitchik,* 873 F.2d at 659; *see also Febres,* 445 F.3d

---

4. 74 Pa.C.S. § 1741(c)provides that "The authority shall have no power, at any time or in any manner, to pledge the credit or taxing power of the Commonwealth or any other government agency, nor shall any of the authority's obligations be deemed to be obli-

gations of the Commonwealth or of any other government agency, nor shall the Commonwealth or any government agency be liable for the payment of principal or interest on such obligations."

at 230. After going through the countervailing factors, the Third Circuit found those did not point clearly in one direction because certain attributes of SEPTA under state law weigh for and against immunity.[5] Regarding the point on which the majority most relies—the Commonwealth's designation of SEPTA as an agency covered under the Pennsylvania Sovereign Immunity Act—it found it to be significant but not dispositive stating that:

> As discussed, SEPTA's enabling legislation grants it attributes that are characteristic of an arm of the state, and those that are not. In *Bolden*, we rejected SEPTA's contention that "the Pennsylvania Sovereign Immunity Act conferred Eleventh Amendment protection upon SEPTA." 953 F.2d at 817; see also *id.* (explaining that "[i]f this reasoning were accepted, each state legislature appar-

ently could confer Eleventh Amendment protection on any entity it wished, including counties and cities, by enacting a statute clothing these entities with 'sovereign immunity' from suit on state claims"). Although we have revised our immunity analysis since *Bolden*, we do not believe this alters our ultimate conclusion on this point.

### C.

In answering the third *Fitchik* factor, what degree of autonomy SEPTA has from the state, the Third Circuit in *Cooper* found that factor weighed slightly against Eleventh Amendment immunity. It did so because the Commonwealth lacked a mechanism to dictate the outcome of decisions made by SEPTA's board of directors. It noted that the same conditional-funding

**5.** The Third Circuit weighed the following in determining SEPTA's status under state law:

> Under its enabling statute, SEPTA has (1) a separate corporate existence, 74 Pa. Cons. Stat. § 1711(a); (2) the power to sue and be sued, *id.* § 1741(a)(2); and (3) the power to enter into contracts and make purchases on its own behalf, *id.* § 1741(a)(8), (9), (12)(18), (20), (21), (22), (24), (25). Other attributes support immunity: (1) its enabling statute provides that SEPTA "shall in no way be deemed to be an instrumentality of any city or county or other municipality or engaged in the performance of a municipal function, but shall exercise the public powers of the Commonwealth as an agency and instrumentality thereof," *id.* § 1711(a) and "shall continue to enjoy sovereign and official immunity, as provided [by the statutory provisions that comprise and pertain to the Pennsylvania Sovereign Immunity Act]," *id.* § 1711(c)(3); (2) SEPTA has the power of eminent domain, *id.* § 1741(a)(13); and (3) SEPTA is immune from state taxation. As noted in *Bolden*, 953 F.2d at 820, Pennsylvania state courts have recognized SEPTA to be a Commonwealth agency to which the Pennsylvania Sovereign Immunity Act applies. *See, e.g., Jones v. SEPTA*, 565 Pa. 211, 772 A.2d 435,

444 (2001) (holding SEPTA immune in a tort case because the case did not fall within an exception to the Sovereign Immunity Act); *Feingold v. SEPTA*, 512 Pa. 567, 517 A.2d 1270, 1276–77 (1986) (finding that SEPTA is "an agency of the Commonwealth" against whom "it would be inappropriate to assess punitive damages"). In other contexts, however, Pennsylvania courts have declined to treat SEPTA as the Commonwealth. *See, e.g., Fraternal Order of Transit Police v. SEPTA*, 668 A.2d 270, 272 (Pa.Commw.Ct.1995) (holding "that for purposes of determining jurisdiction, SEPTA is a local agency and not a Commonwealth agency"); *SEPTA v. Union Switch & Signal, Inc.*, 161 Pa.Cmwlth. 400, 637 A.2d 662, 669 (1994) ("Because SEPTA is financially independent of the Commonwealth and its operations are not statewide, we conclude that the General Assembly did not intend SEPTA to be the Commonwealth for purposes of the Board Claims Act."); *Fisher v. SEPTA*, 60 Pa.Cmwlth. 269, 431 A.2d 394, 397 (1981) ("We do not believe that the Legislature intended SEPTA to be a Commonwealth agency in the traditional sense or for SEPTA employees to be considered Commonwealth employees for purposes of other legislative enactments."). (footnotes omitted.)

influence over any entity that applies for financial assistance, including political subdivisions which, the United State Supreme Court has held is not an arm of the state.

### D.

Balancing those factors, giving equal weight to each, because the state treasury factor weighed against a finding of immunity, SEPTA's status under state law weighed slightly in favor of immunity and the autonomy factor weighs slightly against immunity, the Third Circuit found that SEPTA was not entitled to Eleventh Amendment immunity.

Because I agree with the Third Circuit's analysis, I would affirm the trial court's decision in *Goldman* and reverse in Davis. Accordingly, I respectfully dissent.