# REGENTS OF THE UNIVERSITY OF CALIFORNIA ET AL. *v.* DOE

No. 95–1694.   Argued December 2, 1996—Decided February 19, 1997

*Charles A. Miller* argued the cause for petitioners. With him on the briefs were *Robert A. Long, Jr., John F. Duffy, James E. Holst,* and *Patrick J. O'Hern.*

*Lisa Schiavo Blatt* argued the cause for the United States as *amicus curiae* urging reversal. With her on the brief were *Acting Solicitor General Dellinger, Assistant Attorney General Hunger,. Deputy Solicitor General Bender,* and *Mark B. Stern.*

*Richard Gayer,* by appointment of the Court, 519 U. S. 804, argued the cause for respondent. With him on the brief was *Madeleine Tress.**

JUSTICE STEVENS delivered the opinion of the Court.

The narrow question presented by this case is whether the fact that the Federal Government has agreed to indemnify a state instrumentality against the costs of litigation, including adverse judgments, divests the state agency of Eleventh Amendment immunity. We hold that it does not.

I

Respondent, a citizen of New York, brought suit against the Regents of the University of California and several individual defendants in the United States District Court for the Northern District of California. Although he alleged other claims, we are concerned only with respondent's breach-of-contract claim against the University. Doe contends that the University agreed to employ him as a mathematical physicist at the Lawrence Livermore National Laboratory, which the University operates pursuant to a contract with the Federal Government. According to his complaint, the

---

*Richard Ruda* and *James I. Crowley* filed a brief for the National Conference of State Legislatures et al. as *amici curiae* urging reversal.

*James K. T. Hunter, pro se,* filed a brief as *amicus curiae* urging affirmance.

University wrongfully refused to perform its agreement with Doe because it determined that he could not obtain the required security clearance from the Department of Energy (Department). Relying on Ninth Circuit cases holding that the University is "an arm of the state,"[1] the District Court concluded that the Eleventh Amendment barred respondent from maintaining his breach-of-contract action in federal court.

The Court of Appeals for the Ninth Circuit reversed. Assuming that in some, but not all, of its functions the University is entitled to Eleventh Amendment immunity,[2] the court addressed the narrow question whether it is an arm of the State when "acting in a managerial capacity" for the Livermore Laboratory. *Doe* v. *Lawrence Livermore National Laboratory*, 65 F. 3d 771, 774 (1995). Although the majority applied "a five-factor analysis,"[3] it emphasized that "liability

---

[1] See App. to Pet. for Cert. A–22, A–24, and A–28 (citing *Thompson* v. *City of Los Angeles*, 885 F. 2d 1439, 1442–1443 (1989), and *Jackson* v. *Hayakawa*, 682 F. 2d 1344, 1350 (1982)).

[2] The court relied on one case holding that Congress had abrogated the University's immunity from suit for patent infringement, *Genentech, Inc.* v. *Eli Lilly & Co.*, 998 F. 2d 931, 940–941 (CA Fed. 1993), cert. denied, 510 U. S. 1140 (1994), and another holding that the University had waived its immunity in some cases, *In re Holoholo*, 512 F. Supp. 889, 901–902 (Haw. 1981), for its conclusion that the "University is an enormous entity which functions in various capacities and which is not entitled to Eleventh Amendment immunity for all of its functions." *Doe* v. *Lawrence Livermore National Laboratory*, 65 F. 3d 771, 775 (1995). We have no occasion to consider questions of waiver or abrogation of immunity in this case. Nor is it necessary to decide whether there may be some state instrumentalities that qualify as "arms of the State" for some purposes but not others.

[3] The five factors considered by the court in evaluating whether the University is an arm of the State were: "[1] whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has power to take property in its own name or only the name of the state, and [5] the corporate status of the entity." *Id.*, at 774.

for money judgment is the single most important factor in determining whether an entity is an arm of the state." *Ibid.* The majority opinion gave decisive weight to the terms of the University's agreement with the Department, which made it "clear that the Department, and not the State of California, is liable for any judgment rendered against the University in its performance of the Contract." *Ibid.*

The dissenting judge did not take issue with the majority's emphasis on the importance of the defendant's liability for a money judgment, but he reasoned that the proper analysis should focus on the primary legal liability rather than the ultimate economic impact of the judgment. Noting that it was undisputed that a judgment against the University "is a legal obligation of the State of California," *id.*, at 777, he discounted the significance of the indemnitor's secondary, or indirect, liability. For his conclusion, he relied on Ninth Circuit precedent suggesting that a State may not confer Eleventh Amendment immunity on an entity or individual who would otherwise not enjoy that immunity simply by volunteering to satisfy judgments against the entity, *Durning* v. *Citibank, N. A.*, 950 F. 2d 1419, 1425, n. 3 (1991), or by passing a statute indemnifying individual officers from liability, *Blaylock* v. *Schwinden*, 862 F. 2d 1352, 1353–1354 (1988). "The question is not who pays in the end; it is who is legally obligated to pay the judgment that is being sought." 65 F. 3d, at 777–778.

Because other Courts of Appeals agree with the dissent's focus on legal rather than financial liability,[4] we granted certiorari to resolve the conflict. 518 U. S. 1004 (1996).

---

[4] See *Cronen* v. *Texas Dept. of Human Services*, 977 F. 2d 934, 938 (CA5 1992) ("[T]he source of the damages is irrelevant when the suit is against the state itself or a state agency"); *Cannon* v. *University of Health Sciences/The Chicago Medical School*, 710 F. 2d 351, 357 (CA7 1983) ("No authority supports Cannon's argument that [the Eleventh Amendment] analysis is altered by the possibility that a damage award would be met through insurance proceeds or from federal funds").

## II

The Eleventh Amendment provides:

> "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

It has long been settled that the reference to actions "against one of the United States" encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities. *Poindexter* v. *Greenhow*, 114 U. S. 270, 287 (1885); *In re Ayers*, 123 U. S. 443, 487 (1887); *Smith* v. *Reeves*, 178 U. S. 436, 438–439 (1900); *Ford Motor Co.* v. *Department of Treasury of Ind.*, 323 U. S. 459 (1945). Thus, "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Id.*, at 464.

When deciding whether a state instrumentality may invoke the State's immunity, our cases have inquired into the relationship between the State and the entity in question. In making this inquiry, we have sometimes examined "the essential nature and effect of the proceeding," *ibid.*; see also *Kennecott Copper Corp.* v. *State Tax Comm'n*, 327 U. S. 573, 576 (1946), and sometimes focused on the "nature of the entity created by state law"[5] to determine whether it should

---

[5] Ultimately, of course, the question whether a particular state agency has the same kind of independent status as a county or is instead an arm of the State, and therefore "one of the United States" within the meaning of the Eleventh Amendment, is a question of federal law. But that federal question can be answered only after considering the provisions of state law that define the agency's character.

"be treated as an arm of the State," *Mt. Healthy City Bd. of Ed.* v. *Doyle,* 429 U. S. 274, 280 (1977).[6]

Of course, the question whether a money judgment against a state instrumentality or official would be enforceable against the State is of considerable importance to any evaluation of the relationship between the State and the entity or individual being sued. *Hess* v. *Port Authority Trans-Hudson Corporation,* 513 U. S. 30, 45–51 (1994); *Edelman* v. *Jordan,* 415 U. S. 651, 663 (1974); *Ford Motor,* 323 U. S., at 464. In *Hess,* we evaluated the relationship between an entity created by a bistate compact and the States that had joined to create that entity in order to determine whether that entity could properly be denominated as an "arm" of either of its founding States for the purposes of the Eleventh Amendment. In addition to considering the position of the bistate entity as a unique creature within the federal system, 513 U. S., at 39–42, and the nature of the claims at issue in the underlying proceeding, *id.,* at 42, we focused particular attention on the fact that "both legally and practically" neither of the relevant States would have been obligated to pay a judgment obtained against the bistate entity, *id.,* at 51–52.

Respondent seeks to detach the importance of a State's legal liability for judgments against a state agency from its

---

[6] We relied in *Mt. Healthy* on our earlier decision that a California county is not an "arm of the State" and therefore may be considered a "citizen" of California for the purpose of determining the federal court's diversity jurisdiction over a state-law claim. *Moor* v. *County of Alameda,* 411 U. S. 693, 717–721 (1973). In *Moor* we made a "detailed examination of the relevant provisions of California law" defining counties, noting that the county "is liable for all judgments against it and is authorized to levy taxes to pay such judgments," that it is "empowered to issue general obligation bonds," and that it has other characteristics that provide "persuasive indicia of the independent status occupied by California counties relative to the State of California." *Id.,* at 719–721.

moorings as an indicator of the relationship between the State and its creation and to convert the inquiry into a formalistic question of ultimate financial liability. But none of the reasoning in our opinions lends support to the notion that the presence or absence of a third party's undertaking to indemnify the agency should determine whether it is the kind of entity that should be treated as an arm of the State.

Just as with the arm-of-the-state inquiry, we agree with the dissenting judge in the Court of Appeals that with respect to the underlying Eleventh Amendment question, it is the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant. Surely, if the sovereign State of California should buy insurance to protect itself against potential tort liability to pedestrians stumbling on the steps of the State Capitol, it would not cease to be "one of the United States."

Accordingly, we reject respondent's principal contention— that the Eleventh Amendment does not apply to this litigation because any award of damages would be paid by the Department of Energy, and therefore have no impact upon the treasury of the State of California. The Eleventh Amendment protects the State from the risk of adverse judgments even though the State may be indemnified by a third party.

### III

As an alternative ground for affirmance, respondent invites us to reexamine the validity of the Ninth Circuit cases holding that the University is an arm of the State. He argues that we should look beyond the potential impact of an adverse judgment on the state treasury, and examine the extent to which the elected state government exercises "real, immediate control and oversight" over the University, see *id.*, at 62 (O'CONNOR, J., dissenting), as well as the char-

acter of the function that gave rise to the litigation. Because the question we granted certiorari to address does not encompass this argument, we decline to address it.

The judgment of the Court of Appeals is reversed.

*It is so ordered.*