ANDERSON, Circuit Judge,
dissenting, in which TJOFLAT, BIRCH and WILSON, Circuit Judges, join:
I respectfully dissent. I submit that the opinion for the court misapplies the appropriate Eleventh Amendment analysis. In my judgment, the most favorable face that the sheriff might put on this case would paint this case as similar to Hess v. Port Authority Trans-Hudson Corp., 513 U.S. 30, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994). In Hess, the “[ijindicators of immunity or the absence thereof do not ... all point the same way,” id. at 44, 115 S.Ct. at 402. In this case, the following immunity indicators point against Eleventh Amendment immunity: the sheriffs geographic limitation to a single county, the sheriffs accountability to the electorate of a single county, the state constitution’s treatment of sheriffs as county officers and not as state officials, the state’s delegation of broad policymaking autonomy to the sheriff as opposed to retaining hands-on control, and the fact that the state has no legal liability and no potential legal liability with respect to judgments against a sheriff. As in Hess, the functions of the sheriff “are not readily classified as typically state or unquestionably local.” Id. at 45, 115 S.Ct. at 403. Both states and municipalities engage in law enforcement activities, and in particular in the jailing function.
In my judgment, the second Eleventh Amendment immunity factor — control—is the only one of the four indicators[1] that might provide some support for the majority position.[2] Even assuming arguendo that there are immunity indicators pointing in different directions, the Supreme Court has given ms clear guidance in such situations: “When indicators of immunity point in different directions, the Eleventh Amendment’s twin reasons for being remain our prime guide.” Hess, 513 U.S. at 47, 115 S.Ct. at 404. The first of the twin reasons asked whether it would be “disrespectful” or a “threat to the dignity” of the *1330 state to require the state to answer the complaint in federal court. Of course, it is well established that an identical claim against a city or a county — i.e., Manders’ § 1983 excessive force claim for violating the Eighth Amendment by beating him while in jail — would not be barred by Eleventh Amendment immunity. I see no greater threat to the dignity of the state in the instant suit against the Sheriff of Clinch County.
The second of the twin reasons which the Supreme Court in Hess held should guide us is what the Supreme Court characterized as “the impetus for the Eleventh Amendment: the prevention of federal-court judgments that must be paid out of a State’s treasury.” Id. at 48, 115 S.Ct. at 404 (emphasis added). The Supreme Court also characterized this state treasury factor as “the Eleventh Amendment’s core concern,” id. at 51, 115 S.Ct. at 406, and cited with approval the fact that the vast majority of the circuits have concluded that the state treasury factor is “the most important factor” to be considered. Id. at 49,115 S.Ct. at405.[3]
In applying this analysis, the Supreme Court expressly discounted the significance of the control factor, stating in relevant part:
But ultimate control of every state-created entity resides with the State, for the State may destroy or reshape any unit it creates. “[Political subdivisions exist solely at the whim and behest of their State,” yet cities and counties do not enjoy Eleventh Amendment immunity-
Id. at 47, 115 S.Ct. at 404 (citation omitted). Even more significant, the Court held:
Moreover, rendering control dispositive does not home in on the impetus for the Eleventh Amendment: the prevention of federal-court judgments that must be paid out of a State’s treasury.
Id. at 48, 115 S.Ct. at 404. The fact that the control factor was discounted in Hess is particularly significant for the instant case because the state control in Hess was much more direct and significant than the control exercisable by the state in the instant case. At issue in Hess was the Eleventh Amendment status of a bi-state port authority. The governing body of the port authority, twelve commissioners, were appointed, six by each state. Id. at 36, 115 S.Ct. at 399. Any vote or action by the commissioners was subject to a veto by the governor their respective states. Id. at 37, 115 S.Ct. at 399. Other control was exer *1331 cisable by the state legislatures. Id. In Hess, in other words, there was direct control over any and all decisions. On the other hand, the state control in the instant case is clearly indirect. It includes delegations of authority; it provides for general standards and inspections; it reserves for the Governor the power to temporarily suspend a sheriff for specified misconduct or incapacity, and participation in the process of removal from office, again for specified misconduct or incapacity. Moreover, the state control in the instant case is either equally applicable to city and county jails, or analogous to state control over other local officers. In short, the state control here is precisely the kind of indirect and ultimate control which the Supreme Court in Hess discounted as being reserved by the state with respect to every state-created entity. Id. at 47,115 S.Ct. at 404 (“But ultimate control of every state-created entity resides with the State.”).[4] Thus, if state control was not sufficient to warrant Eleventh Amendment immunity in Hess, I cannot conclude that it is in the instant case.[5] I respectfully submit that the opinion for the court overemphasizes the control factor and underemphasizes the state treasury factor. With respect to the latter, it is clear that the state treasury is not obligated to pay adverse judgments against the sheriff. In this respect too, the instant case is even clearer than Hess.[6]
In sum, I submit that, at best, the other immunity indicators point in different directions. As in Hess, we should therefore look to the “twin reasons” for guidance. I submit that these reasons point against Eleventh Amendment immunity, and indeed more strongly so than in Hess.
In addition to the inappropriate emphasis discussed above, I also respectfully disagree with the opinion for the court in another respect. In my judgment, it asks the wrong question. It asks who has the most control, the state or the county. I submit that the proper question is whether the sheriff has carried his burden of proving that he is an arm of the state. In other words, the issue is not the state versus the county; rather, the issue is whether the sheriff is an arm of the state vel non. The mere fact that the sheriff is not the policymaker for the county commission, is not controlled by the county commission, and the fact that the county has no respondeat superior liability for judgments against the sheriff, do not, either singly or in combination, go very far *1332 toward establishing that a Georgia sheriff is an arm of the state. The Seventh Circuit recognized this in Franklin v. Zaruba, 150 F.3d 682 (7th Cir.1998). There, in holding that an Illinois sheriff was not entitled to Eleventh Amendment immunity, the court said:
According to defendants, if sheriffs in Illinois are not agents of the county for purposes of holding the county hable under respondeat superior, then sheriffs must therefore be agents of the state. This argument overlooks a crucial third possibility ... — namely, that the sheriff is an agent of the county sheriffs department, an independently-elected office that is not subject to the control of the county in most respects.
Id. at 685. The court held that the fact that “the county is not liable under respon-deat superior for the actions of the sheriff does not necessarily entail that the sheriff must necessarily be an agent of the state.” Id. at 686. Similarly, in Hess, there was no attempt to assign responsibility for the bi-state authority to some level of government other than the state. It was sufficient there, as it should be here, to say that defendant is not an arm of the state.
For the foregoing reasons, I respectfully dissent.

. With respect to the first indicator — how the state defines the Sheriff's Office with respect to the jail function — I agree with most of what Judge Barkett says in her dissent. See Bark-ett, J., dissenting, at Part I. With respect to the third indicator — the source of defendant's funding — I again agree with most of what Judge Barkett has written. Id. at Part III. With respect to the fourth indicator — the state’s liability for adverse judgments — no one has suggested that the state would be liable, and thus this most important factor, this core concern of the Eleventh Amendment, points strongly against immunity. In other words, I agree with most of what Judge Barkett has written, but I specifically decline to join her implication that the county governing body would bear § 1983 liability for actions of the sheriff. All we need decide in this case is that the sheriff is not an arm of the state; we need not decide the county's liability vel non.

. Ultimately, I believe even the control factor fails to offer much support for the majority position. The control exercised by the state is simply too indirect and too limited. See brief discussion below, and the fuller discussion in Barkett, J., dissenting, Part II.

. Following Hess, the cases have uniformly continued to consider the state treasury factor as dominant. See Vogt v. Board of Comm’rs, 294 F.3d 684, 689 (5th Cir.2002) (following Hess, “[the] most significant factor in assessing an entity’s status is whether a judgment against it will be paid with state funds”) (citation omitted); Streit v. County of Los Angeles, 236 F.3d 552, 567 (9th Cir.2001) (applying Hess, whether state is financially liable for judgment against sheriff's office for operation of county jail is "the most important factor in identifying an arm of the state”); Harter v. Vernon, 101 F.3d 334, 338-39 (4th Cir.1996) (observing, in holding that North Carolina sheriff and deputies are not immune, that "when the state treasury will not pay the judgment ... the most salient factor in Eleventh Amendment decisions weighs against a finding of immunity”) (internal quotes omitted); Sonnenfeld v. Denver, 100 F.3d 744, 749 (10th Cir.1996) (citing Hess, "[t]he most important factor in determining whether a governmental entity is entitled to Eleventh Amendment immunity is whether a judgment against it would be paid from the state treasury.”); Christy v. Pennsylvania Turnpike Comm’n, 54 F.3d 1140, 1145, 1149-50 (3rd Cir.1995) (quoting Hess, "the most important factor is whether a judgment against the entity in question ... would be paid out of the state treasury,” and holding that there was no Eleventh Amendment immunity despite considerable state control) (internal quotes omitted).

. Justice O’Connor's dissent in Hess would have placed greater weight on the control factor, but only on "real, immediate control and oversight, rather than on the potentiality of a State taking action to seize the reins.” See id. at 62, 115 S.Ct. at 411 (O’Connor, J., dissenting). It is doubtful that the state’s control in the instant case would satisfy Justice O’Connor's standard.

. Although the control factor is relevant both in the policymaker inquiry for § 1983 purposes and in the Eleventh Amendment inquiry, control is a more significant factor in the § 1983 inquiry. Compare Turquitt v. Jefferson County, Alabama, 137 F.3d 1285, 1292 (11th Cir.1998) (en banc) (“Local governments can never be liable under § 1983 for the acts of those whom the local government has no authority to control.”) with Hess, 513 U.S. at 47-48, 115 S.Ct. at 404 (discounting the control factor as above discussed). For this reason, as well as the primacy for the Eleventh Amendment of the state treasury factor, the § 1983 caselaw should be used only cautiously in an Eleventh Amendment analysis.

.Nothing in Regents of the Univ. of Calif, v. Doe, 519 U.S. 425, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997), suggests a contrary result here. In Doe, the Court framed the core Eleventh Amendment question as whether an adverse judgment would expose the state to "potential” legal liability, even if some coverage mechanism existed to indemnify the state against actual liability. Id. at 431, 117 S.Ct. at 904. There is no suggestion here that the state is liable for judgments against sheriffs in any fashion, real or potential.