[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-15511
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 15, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00095-CV-HL-7

RICKARD HARLEY SCRUGGS,

Plaintiff-Appellant,

versus

ALLEN LEE, Deputy,
WINSTON PETERSON, Sheriff,
FERRELL HOWELL, Deputy,
RAYMOND PETERSON, Deputy,
JOHN DOE, unknown two
truck driver acting as agent
for Clinch County, et al.,

Defendants-Appellees,

GARY SIMMONS,
JOHN T (TREY) BASS,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(June 15, 2007)**

Before ANDERSON, BARKETT and PRYOR, Circuit Judges.

PER CURIAM:

Rickard Harley Scruggs appeals the summary judgment in favor of Winston C. Peterson, Sheriff of Clinch County, Georgia; Ferrell Howell and Raymond Peterson, Clinch County Deputy Sheriffs; and Linda Brown, Magistrate Judge of Clinch County, and against Scruggs's complaint of unlawful detention. See 42 U.S.C. § 1983. Scruggs also appeals the denial of his motion for costs from James Green. We affirm.

## I. BACKGROUND

On November 26, 2003, Scruggs was arrested for possession of marijuana following a search of his vehicle at a road block. Deputy Allen Lee, now deceased, advised Scruggs of his rights and took Scruggs into custody. Deputy Howell transported Scruggs to the Clinch County jail. Scruggs refused to participate in the booking process and demanded an immediate judicial determination of whether he should be detained. Scruggs was transferred to a holding cell, where he remained for approximately 70 hours.

On November 29, 2003, Deputy Peterson brought Magistrate Judge Brown to the jail to meet with Scruggs. Brown told Scruggs that she was there to set his bond and asked him to sign a First Appearance on Arrest form. Scruggs signed the

form after Brown struck the statement that a hearing was provided within 48 hours of arrest. Scruggs was then processed through booking and was released on bond that evening.

On November 23, 2004, Scruggs commenced a civil action against Deputies Peterson, Howell, and Lee, in their individual and official capacities; Sheriff Peterson, in his official capacity; Department of Corrections Officers Green and John Bass, in their individual capacities; Department of Natural Resources Officer Gary Simmons; Chief Magistrate Judge Annie Ruth Steedley, in her official capacity; Magistrate Judge Brown, in her individual and official capacities; and Clinch County Commissioners Strickland, Hart, Corbett, Cross-Scott, and Smith. Scruggs complained that his arrest and detention violated his federal constitutional rights and state law. Officers Bass and Simmons were dismissed by stipulation and a stipulation of death was filed for Deputy Lee. Following discovery, the Clinch County Defendants and Officer Green moved for summary judgment. Scruggs also moved for summary judgment. The district court granted summary judgment to the Clinch County Defendants and Officer Green on all federal claims and declined to exercise supplemental jurisdiction over Scruggs's remaining state law claims. Scruggs appealed the summary judgment as well as the order denying Scruggs's motion for reimbursement of the costs incurred in effecting service on Green.

## II. STANDARD OF REVIEW

We review a summary judgment de novo, and we resolve all issues of material fact in favor of the non-moving party. Cuvillier v. Rockdale County, 390 F.3d 1336, 1338 (11th Cir. 2004). We review the denial of costs for abuse of discretion. See Cochran v. EI duPont de Nemours, 933 F.2d 1533, 1540 (11th Cir. 1991).

## III. DISCUSSION

Scruggs contends that the district court erred when it granted the motion for summary judgment filed by Sheriff Peterson, Deputies Howell and Peterson, and Judge Brown. Scruggs does not appeal the summary judgment in favor of Chief Magistrate Steeley and the Clinch County Commissioners or the judgment against his federal claims arising from his arrest. Scruggs also maintains that the district court erred when it denied Scruggs's motion for the imposition of costs against Green for Green's failure to waive service under Federal Rule of Civil Procedure 4(d)(2). We address the summary judgment and order denying costs in turn.

### A. Summary Judgment

Scruggs contends that the district court erred when it granted summary judgment in favor of Sheriff Peterson, Judge Brown, and Deputies Howell and Peterson. We must evaluate the claims against the sheriff and deputies in their official and individual capacities separately. We then consider the claims against

4

Judge Brown and her entitlement to judicial immunity.

## 1. Sheriff Peterson and Deputies Howell and Peterson Acting in Their Official Capacity

Under the Eleventh Amendment, a State is immune from suit in federal court without its consent. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S. Ct. 900, 908 (1984). This immunity extends to an "arm of the State," which includes agents and instrumentalities of the State. Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429–30, 117 S. Ct. 900, 903–904 (1997). "Whether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc). We look at four factors to determine whether an entity is an "arm of the State": "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." Id. at 1309. In Manders, we examined Georgia law and held that Clinch County Sheriff Peterson was entitled to Eleventh Amendment immunity as an "arm of the State" when he established and executed a use-of-force policy at the jail. Id. at 1328.

Although the policy is different, Sheriff Peterson's policy and procedure for processing detainees arrested without a warrant are functionally the equivalent of the use-of-force policy in Manders. Our analysis in Manders applies, see id. at

5

1318–1328, and we conclude that Sheriff Peterson, in his official capacity, is an "arm of the State" entitled to immunity in executing the function of establishing policies at the jail for processing arrestees. As employees of the sheriff, deputies Howell and Peterson, in their official capacities, are also entitled to Eleventh Amendment immunity. See id. at 1311.

2. Deputies Peterson and Howell in Their Individual Capacities

Scruggs contends that the district court erred when it entered judgment against his claim that deputies Peterson and Howell violated Scruggs's constitutional rights when the deputies detained Scruggs for more than 48 hours without a probable cause hearing following a warrantless arrest. Deputies Peterson and Howell argue that they are entitled to qualified immunity from Scruggs's action brought against them in their individual capacities. We agree with the deputies and the judgment of the district court.

Federal law provides government officials a qualified immunity when sued individually for an alleged violation of a constitutional right. "The privilege is 'an immunity from suit rather than a mere defense to liability.'" Saucier v. Katz, 533 U.S. 194, 200, 121 S. Ct. 2151, 2156 (2001). This form of immunity is not absolute, however.

The evaluation of a defense of qualified immunity involves three steps. First, a public official who asserts a defense of qualified immunity must establish

6

that he was "engaged in a 'discretionary function' when he performed the acts of which the plaintiff complains." Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004). The burden then shifts to the plaintiff to establish that the defendant violated the Constitution. Hope v. Pelzer, 536 U.S. 730, 736, 122 S. Ct. 2508, 2513 (2002). In the final step, the plaintiff must establish that the constitutional right was clearly established when the violation occurred. Saucier, 533 U.S. at 201, 121 S. Ct. at 2156.

Deputies Howell and Peterson were engaged in discretionary functions when they performed the acts of which Scruggs complains. When we assess whether an act is discretionary, "[w]e ask whether the government employee was (a) performing a legitimate job-related function . . . (b) through means that were within his power to utilize." Holloman, 370 F.3d at 1265. The acts of processing and detaining an arrestee qualify as discretionary functions of law enforcement officers.

We can resolve the qualified immunity issue at step two. Taking the facts in the light most favorable to Scruggs, Howell and Peterson's conduct did not violate the Constitution. Deputy Peterson had no contact with Scruggs until he brought Magistrate Judge Brown to the jail to see Scruggs on the day Scruggs was released. Peterson's only other involvement with Scruggs was the act of taking Scruggs's fingerprints before Scruggs's release. These acts by Peterson do not amount to a

7

violation of Scruggs's constitutional rights.

Neither do the facts support a conclusion that Howell's conduct violated the Constitution. Howell was present at the road block where Scruggs was arrested and transported Scruggs to the jail on November 26, 2003. That same day, Howell attempted to obtain information from Scruggs for booking. Scruggs refused and demanded to see a judge. Howell placed Scruggs in a holding cell and turned Scruggs over to Deputy Lee, the arresting officer, when Lee arrived at the jail. Howell had no further interactions with Scruggs.

These facts do not support a conclusion that Howell violated a constitutional right of Scruggs. An individual is not entitled to an immediate probable cause hearing following a warrantless arrest. County of Riverside v. McLaughlin, 500 U.S. 44, 54, 111 S. Ct. 1661, 1669 (1991). There is no evidence that Howell was aware Scruggs was detained without a probable cause hearing for longer than 48 hours after his warrantless arrest. Deputies Howell and Peterson are entitled to qualified immunity from Scruggs's civil rights action against them.

### 3. Judge Brown's Entitlement to Judicial Immunity

Judges are entitled to absolute immunity from civil liability under section 1983 for acts performed in their judicial capacity, provided such acts are not done in the "'clear absence of all jurisdiction.'" Stump v. Sparkman, 435 U.S. 349, 357, 98 S. Ct. 1099, 1105 (1978) (quoting Bradley v. Fisher, 80 U.S. (13 Wall.) 335,

8

351 (1872)).  Judge Brown was acting in her judicial capacity when she met with Scruggs at the jail on November 29, 2003.  Because Judge Brown did not act in the "clear absence of all jurisdiction," she is immune from civil liability.

*B.  Motion for Costs*

The district court did not abuse its discretion when it denied Scruggs's motion for reimbursement of the costs incurred in effecting service on Green.  Scruggs mailed the request for waiver of service to the Valdosta Correctional Institution after Green was no longer employed there.  There is no evidence that Green received the request for waiver.

## IV.  CONCLUSION

The summary judgment and order denying costs are

**AFFIRMED.**