*2 TORRUELLA, Circuit Judge
(Concurring in the denial of en banc review).
In our November 23, 2009 opinion, we affirmed the district court’s grant of a preliminary injunction against the Milk Industry Regulation Administration for the Commonwealth of Puerto Rico (“ORIL” by its Spanish acronym). In its opinion and order, the district court found that Plaintiffs had shown a likelihood of success on the merits of their claim that ORIL put into place an arbitrary and discriminatory regulatory scheme that violated the Due Process, Equal Protection and Takings clauses of the United States Constitution. As part of the preliminary injunction, the district court directed ORIL to adopt a regulatory mechanism to compensate Plaintiffs for the deficient rate of return that was imposed by ORIL’s regulatory scheme from the year 2003. In compliance with the district court’s injunctive order, ORIL adopted an administrative order which directed that 1.5 cents from the sale of each quart of milk be earmarked for the purpose of complying with the regulatory accrual mechanism. That is, the money used to comply with the district court’s injunction would be paid by the consumers of milk in Puerto Rico. ORIL also adopted Regulation No. 12, which established that the monies raised from the sale of milk be deposited in a special account within the Milk Industry Development Fund.[1]
The dissent from denial of en banc review argues that the injunction issued by the district court contravenes the strictures of the Eleventh Amendment because it makes the Commonwealth liable for payment of monetary relief. There is no basis in the record for this conclusion. The dissent bases this conclusion on two mistaken assumptions: (1) that the monies raised by the regulatory accrual are public funds and (2) that the Commonwealth is or would be required to expend public funds or resources to compensate Plaintiffs. I write separately to dispel these assumptions and to clarify that the Commonwealth’s dignitary and fiscal interests are not implicated in this case as to require this court to conclude that sovereign immunity poses a bar to relief.
The dissent suggests that funds deposited in the Milk Industry Development Fund are considered public funds of the Commonwealth, and that therefore, the monies deposited in the special account should be considered public funds. However, we are dealing in this case with monies paid by consumers of milk which can only be used for the purposes designated by the injunction. There is no indication that the funds deposited in the special account would be or can be commingled with the Commonwealth’s general revenues, or with the monies deposited in the Milk Industry Development Fund according to the law. More importantly, the Defendants have not argued, on appeal that the monies raised by the regulatory accrual are public in nature. On the basis of the record before us, it is therefore impermissible to suggest, as the dissent does, that the injunction reaches the Commonwealth’s funds.
Secondly, there is simply no indication in the record or in the Regulations adopted by ORIL that an eventual judgment ordering disbursal of the monies raised pursu *3 ant to the regulatory accrual would be satisfied by public funds or that the Commonwealth’s resources would be affected if in due course the Plaintiffs are found entitled to the monies raised by the regulatory accrual.[2] Neither the Commonwealth nor ORIL have been adjudged responsible for contributing funds to the special account, and the contributions made to the account are kept separate from the Commonwealth’s general revenues and from the Milk Industry Development Fund’s monies. Thus, the revenues raised by the regulatory accrual are special funds that do not make the Commonwealth the real party in interest for Eleventh Amendment purposes. See Hudson v. City of New Orleans, 174 F.3d 677, 689 (5th Cir.1999) (reasoning that, for Eleventh Amendment purposes, the fact that an entity receives state funds which are earmarked for specific or special purposes counsels against finding that the state would be responsible for the entity’s debts and obligations); Brown v. Porcher, 660 F.2d 1001, 1006-07 (4th Cir.1981) (holding that the Eleventh Amendment posed no bar to compensation payable from South Carolina’s unemployment compensation fund which was a special fund “insulated” from public monies and separately financed). Cf. Austin v. Berryman, 862 F.2d 1050, 1056 (4th Cir.1988) (holding that the Eleventh Amendment barred monetary relief against Virginia’s unemployment compensation fund which was “integrated” into the state’s treasury).
The fact that the special account was created within the Milk Industry Development Fund is insufficient to conclude that the Commonwealth would be required to expend state funds to comply with the injunction. The Commonwealth simply has not been required to appropriate its funds to comply with the regulatory accrual, and given that the funds deposited in the special account are earmarked to comply with the regulatory mechanism, there is no basis to conclude that a final judgment in favor of Plaintiffs would amount to a judgment against the Commonwealth.[3]
The dissent rightly cautions that the analysis of an entity’s entitlement to sovereign immunity should not be transformed into a formalistic inquiry. However, the dissent mistakenly criticizes the panel for engaging in this type of inquiry. Far from adopting a formalistic approach towards Eleventh Amendment analysis, the panel’s decision considers, from a practical perspective, the Commonwealth’s immediate and ultimate liability and holds that sovereign immunity poses no bar to the relief ordered by the district court, precisely because the Commonwealth was not adjudged liable for payment of a monetary judgment, or held in any fashion subsidiarily responsible for providing the funds that nurture the special account.
Likewise, the dissent errs in asserting that the panel’s decision is inconsistent with the Supreme Court’s decision in Regents of the University of California v. *4 Doe, 519 U.S. 425, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997). In Doe, the Supreme Court held that the Eleventh Amendment barred a claim for monetary relief against the State of California, even though the damages would be paid by a third party. For Eleventh Amendment purposes, the Supreme Court found it irrelevant that the State of California had been relieved of its obligation to pay a judgment because a third party would cover the state’s liability. In Doe, the State of California assumed an obligation upon a finding of liability. In contrast, the district court has never adjudged the Commonwealth liable for monetary relief in this case. Thus, while the Supreme Court clarified in Doe that the state’s potential legal liability was the relevant factor in the Eleventh Amendment question regardless of the possibility of third-party indemnification, in this ease the Commonwealth has not been held legally or potentially liable for compensatory damages. That is, the consumers of milk in Puerto Rico are not relieving the Commonwealth of its liability, since the Commonwealth has not been adjudged liable for the type of compensatory damages that the State of California was potentially liable for in Doe.[4] Rather than contravening our panel decision, the Supreme Court’s decision in Doe supports the conclusion that where there is no basis to find that the state is potentially liable for monetary compensation, the Eleventh Amendment poses no bar to relief, such as the one ordered by the district court in this case.
Doe established that the state’s legal liability is a crucial consideration in Eleventh Amendment analysis. But that liability is inextricably bound to the overriding question of whether the state would be “legally and practically” required to pay a monetary judgment. See Hess, 513 U.S. at 51, 115 S.Ct. 394 (stating, that where “legally and practically” the state would not be required to cover the entity’s indebtedness, “the Eleventh Amendment’s core concern is not implicated”). In this case, however, it is pure speculation to state that the Commonwealth is legally, practically or potentially bound to expend funds in the event that the monies raised from milk sales prove insufficient to compensate the milk producers. Unlike Doe where the State of California was considered to be potentially liable to plaintiffs, the Commonwealth’s liability in this case is speculative in nature. As I have stated, the funds used to comply with the district court’s injunction are raised from the price consumers pay for milk and the revenues are kept in a special account which is segregated from the Commonwealth’s funds. Rather than imposing potential liability on the Commonwealth or its agencies, this regulatory mechanism imposes an obligation on the consumers of milk and carefully shields the Commonwealth’s funds and resources from potential liability. Therefore, the dissent’s claim that the Commonwealth would be required to pay a monetary judgment is speculative and is insufficient to conclude that the district court’s order violates the Eleventh Amendment.
Pursuant to the Supreme Court’s decision in Doe, the issue of whether a monetary judgment against a state official is enforceable against the state is still a crucial consideration in Eleventh Amendment analysis. 519 U.S. at 430, 117 S.Ct. 900 *5 (explaining that the Court in Hess “focused particular attention” on the fact that the states would not have been obligated to pay the judgment). See, e.g., Fresenius Med. Care Cardiovascular Res. Inc. v. P.R. & Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56, 65 (1st Cir.2003)(explaining that the vulnerability of the state’s purse is a salient factor in Eleventh Amendment arm-of-the-state analysis and stating that where it is clear that the state’s treasury is not at risk, the control exerted by the state over the entity does not entitle the state to immunity); Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Auth., 991 F.2d 935, 939 (1st Cir.1993)(“The Eleventh Amendment’s primary concern is to minimize federal courts’ involvement in disbursal of the state fisc.”). Thus, the panel’s opinion is consistent with settled precedent that examines an entity’s entitlement to sovereign immunity through the prism of the financial burden actually or potentially imposed on the state.
Finally, the dissent mistakenly contends that the panel’s decision ignores the Commonwealth’s dignitary interests, which are protected by the Eleventh Amendment. In examining the contours of the state’s sovereign immunity, the Supreme Court has explained that the Eleventh Amendment confirms the very essence of the principle of dual sovereignty embedded in the nation’s constitutional structure. Blatchford v. Native Vill. of Noatak & Circle Vill., 501 U.S. 775, 779, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991). Though the injunction requires ORIL to adopt the regulatory mechanism, ORIL was not stripped of its power to set the price of milk and to regulate the Milk Industry. Given that ORIL retains control over the milk industry, the panel rightly concluded that the regulatory accrual has not burdened the Commonwealth’s entitlement to respect as a sovereign entity in a manner that contravenes the Eleventh Amendment.
In sum, the panel’s decision in this case evaluates the substance of the relief afforded by the district court and draws the line against the application of sovereign immunity. This case simply does not involve a monetary award against the state that burdens the state’s treasury, nor does it implicate the Commonwealth’s dignitary interests in a manner offensive to the Eleventh Amendment. I therefore concur with the majority in denying en banc review.

. The Fund was created to "promot[e] the production, sale, processing and consumption of fresh milk and its byproducts, and ... any other activity necessary for the advancement of the milk industry.” P.R. Laws Ann. tit. 5, § 1099. Il is "supported by contributions from milk producers at the rate of one-half (1/2) cent for each quart of milk produced and accepted by the processors for pasteurizing.” Id.

. The intricacies of the regulatory mechanism that Defendants adopted have not been challenged by the parties. Defendants have not argued on appeal or in their petition for rehearing en banc, that the regulatory mechanism forces the Commonwealth to expend public funds or resources in violation of the Eleventh Amendment. Therefore, any arguments raised by the dissent sua sponte regarding the details of the regulatory accrual are insufficient to justify rehearing in this case.

. In fact, the precise compensation that Plaintiffs will be entitled to receive has not been determined as of yet, nor can it be gleaned from the record that the Commonwealth will bear any type of subsidiary monetary liability in this case. Thus, any contention that such an impermissible outcome is within the realm of possibility on the present record, is beyond speculation.

. The Supreme Court’s decision in Doe is distinguishable because it dealt with an indemnification agreement between the State and a third party. This contractual relationship had nothing to do with the relationship between the state and the plaintiff who sought relief against the state in federal court. That is, the presence of third-party indemnitor in Doe failed to alter the state's liability towards the plaintiff.