BYE, Circuit Judge,
dissenting.
I respectfully dissent. I agree with the majority opinion that 28 U.S.C. § 1447(d) does not prohibit our review of the district court’s remand order. I further support the majority’s application of our arm-of-the-state factors under the Eleventh Amendment immunity test to determine whether the Retirement Systems are arms of the State of Missouri as they relate to this litigation. However, because my *834 weighing of these factors leads me to conclude the Retirement Systems are citizens for diversity jurisdiction purposes, I would reach the merits of the forum-selection clause question.
I
As an initial matter, the majority acknowledges several characteristics of the Retirement Systems which indisputably weigh in favor of a determination as to the Retirement Systems not being arms of the state: (1) the Retirement Systems are organized as “bod[ies] corporate”; (2) they have the power to sue and be sued in their own name; and (3) they can “transact all of [their] business, invest all of [their] funds, and hold all of [their] cash, securities, and other property.” Mo.Rev.Stat. §§ 169.020(1), .610(1). Although these features, standing alone, are not dispositive in the arm-of-the-state inquiry, “the power to sue in the entity’s own name, when coupled with other powers of self-determination typically held by distinct juridical entities (power to contract, power to buy, hold, and sell property), undeniably affords the entity some additional independence from the State....” Univ. of R.I. v. A.W. Chesterton Co., 2 F.3d 1200, 1207 n. 11 (1st Cir.1993); see also Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 243-44 (2d Cir.2006) (concluding the identification of the entities as “bod[ies] corporate” weighed against a finding as to the specific entity being an arm of the state). Accordingly, I remain unpersuaded by the majority’s attempt to minimize these characteristics in lieu of its enhanced focus on the Retirement Systems’ purpose and manner of carrying out such purpose. See Moor v. Alameda County, 411 U.S. 693, 719, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973) (stating the “most notabl[é]” factor was that the county was given “corporate powers” and was designated a “body corporate and politic”).
Moreover, the additional regulations cited by the majority do not necessarily support its conclusion. For instance, the majority places emphasis on Missouri’s regulation of the Retirement Systems’ source of revenue and financial operations, notwithstanding the fact these same statutes expressly prohibit the State from appropriating funds “directly or indirectly” to finance the Retirement Systems, and declare the funds of the Retirement Systems “to be the moneys and funds of the retirement system” which “shall not be commingled with state funds,” as will be discussed more fully below. Mo.Rev. Stat. §§ 169.110, .040(1), .610(3).
In addition to their operational independence, the Retirement Systems enjoy significant political autonomy from the State. First, the Governor appoints only a minority of Board positions, none of whom can be state employees or elected officials. Mo. Rev.Stat. §§ 169.020(2), .020(4). Under these restrictions, the Retirement Systems are provided more autonomy than those systems where a governor appoints a majority of the board or otherwise retains control, although even the latter situation does not necessarily dictate an entity is an arm of the state. See Auer v. Robbins, 519 U.S. 452, 456 n. 1, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (“While the Governor appoints four of the board’s five members,
... the city of St. Louis is responsible for the board’s financial liabilities, ... and the board is not subject to the State’s direction or control in any other respect. It is therefore not an ‘arm of the State’....”). Moreover, the Board is empowered to select staff positions and control its own funds, among other tasks. Mo.Rev.Stat. §§ 169.020(10), .020(11), .020(20)., .040(1), .040(2). While there are certainly aspects which detract from the Retirement Systems’ independence, such as their limited *835 scope of services, these aspects do not necessarily result in a determination that the Retirement Systems are an arm of the State.
What remains is the question of whether the Retirement Systems are liable for money judgments against them or, conversely, whether the State would benefit from a judgment in favor of the Retirement Systems. This is widely considered to be the most important factor in the arm-of-the-state analysis. See Regents of Univ. of Cal. v. Doe, 519 U.S. 425, 430, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997) (“Of course, the question whether a money judgment against a state instrumentality or official would be enforceable against the State is of considerable importance to any evaluation of the relationship between the State and the entity or individual being sued.”); Thomas v. St. Louis Bd. of Police Comm’rs, 447 F.3d 1082, 1084 (8th Cir. 2006) (“[Cjourts assess the agency’s degree of autonomy and control over its own affairs and, more importantly, whether a money judgment against the agency will be paid with state funds.”) (emphasis added); Hadley v. N. Ark. Cmty. Technical Coll., 76 F.3d 1437, 1439 (8th Cir.1996) (“A narrow majority of the Supreme Court recently held that exposure of the state treasury is a more important factor than whether the State controls the entity in question.”) (citing Hess v. Port Auth. Trans-Hudson Carp., 513 U.S. 30, 48, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994)).
In this case, as State Street argues, a judgment in favor of the Retirement Systems cannot flow to the State because Missouri statutes insulate the entities’ accounts from those of the State. The Retirement Systems are contributory retirement plans which receive their funds from local school districts and their employees, not by legislative appropriation. Indeed, by the explicit language contained in the Missouri statute, the State is prohibited from “directly or indirectly” contributing funds to the Retirement Systems. Mo. Rev.Stat. § 169.110. Moreover, the Retirement Systems’ funds are “deemed to be the moneys and funds of the retirement system and not revenue collected or moneys received by the state.” Mo.Rev.Stat. § 169.040(1). To further ensure this separation, the Missouri statute forbids the commingling of funds between the Retirement Systems and the State. Id. Similarly, the Retirement Systems’ costs “shall be paid from funds of the system,” rather than by legislative appropriation. Mo.Rev. Stat. § 169.020(19). In view of the Retirement Systems’ exclusive and extensive control of their funds, any potential recovery by the Retirement Systems in this case is not likely to inure to the benefit of the State.
The majority concedes, as it must, the extensive statutory restrictions set forth above precluding the State’s control over the Retirement Systems’ financial affairs. Nevertheless, the majority proceeds to navigate around the statutes’ express directives by emphasizing what is not present in the statutes, such as the absence of an express power of the Retirement Systems to issue bonds or levy taxes, which may be indicative of an entity which is not an arm of the state. What’s more, the majority relies heavily on the hypothetical likelihood as to Missouri courts being able to label the Retirement Systems as agencies of the State, and, hypothetically, the State Legal Expense Fund (SLEF) could thereafter make funds available for the payment of any claim against the alleged agencies.[10] The majority also finds sup *836 port for its determination in the liability the State might incur pursuant to its hypothetical contractual obligations to employees who contribute to the Retirement Systems. Although I disagree with the majority’s analysis regarding both the SLEF and the contractual performance issue — both of which were never raised by either party — I believe we need to look no further than the express language of Missouri’s statutes to conclude the financial factor weighs in favor of State Street. In sum, although the majority correctly notes the question is one of “potential” benefit, see Doe, 519 U.S. at 431, 117 S.Ct. 900, the majority’s analysis effectively turns a blind eye to the explicit statutory language in lieu of its hypothetical assessments that border on contradicting those very statutes.
Under the explicit statutory language, I believe the Retirement Systems are similar to other retirement systems held not to be arms of the state, largely due to their fiscal autonomy and the lack of an obligation on the state’s part to pay the systems’ debts. See, e.g., Blake v. Kline, 612 F.2d 718, 723-24 (3d Cir.1979) (vacating and remanding the district court’s holding of Eleventh Amendment immunity where the Public School Employees’ Retirement Board of Pennsylvania funds were set apart and not to be commingled with state funds and it was not clear whether the system performed a proprietary or governmental function or how much autonomy the system maintained); Roche v. Lincoln Prop. Co., 175 Fed.Appx. 597, 601 (4th Cir.2006) (holding a judgment against a retirement investment fund whose expenses were assessed solely against the fund, and not the state treasury, would not affect the state, and therefore the fund was not an arm of the state); Rivera-Torres v. Sistema de Para Maestros, Inc., 453 F.Supp.2d 383, 386-87 (D.P.R.2006) (holding the retirement system was not an arm of the state because it could sue and be sued, prepare its own budget, and all debts and obligations were the responsibility of the system itself); Accenture LLP v. CSDV-MN Ltd. P’ship, No. 06-CV-1270, 2006 WL 3825029, at *2-3 (N.D.Ill. Dec. 27, 2006) (determining the California Teachers Retirement System was not an arm of the state because it was not publicly financed; it was funded through contributions from employers, members, and the state; it maintained the power to sue, contract, and own property; and the appointment of some members of the Board by the governor did not amount to control by the state); Travelers Ins. Co. v. Teacher Ret. Sys. of Texas, No. 92 C 6651, 1993 WL 34757, at *3-5 (N.D.Ill. Feb. 5, 1993) (concluding the Teacher Retirement System of Texas was not an alter ego of the state where, despite contributions from the state to the system, the judgment would not increase the obligations to the state treasury, and therefore, would not amount to a judgment against the State); Almond v. Boyles, 612 F.Supp. 223, 228 (E.D.N.C.1985), aff'd in part, vacated in part, 792 F.2d 451 (4th Cir.1986) (holding the retire *837 ment system was not an arm of the state where the legislature did not appropriate a substantial portion of money held by the system and a judgment against the system would not lead to an additional appropriation of state funds).
Although it recognizes two of these cases, the majority believes these holdings “reflect a minority view.” Likewise, the Retirement Systems center their entire argument around the “virtually unanimous federal court authority” finding retirement systems to be arms of the state. I am not persuaded by the “majority” of cases for at least two reasons. First, “[wjhile several courts have examined the instant question of whether a state retirement system is the alter ego of the state, they are divided on the issue.” Travelers Ins. Co., 1993 WL 34757, at *2. At a minimum, the Retirement Systems’ suggestion as to there being “virtually unanimous federal court authority” appears to be flatly wrong, as demonstrated by a review of the case law cited above holding otherwise.
More importantly, however, even if there is such unanimous authority, the Retirement Systems’ cursory recitation of a “majority” view does not suffice in this case, given the inquiry we must undertake. Under our arm-of-the-state inquiry, “the court must examine the particular entity in question and its powers and characteristics as created by state law....” Greenwood v. Ross, 778 F.2d 448, 453 (8th Cir.1985) (internal quotation marks and citation omitted). As a result, the Retirement Systems’ proclamation as to there being near “unanimous” authority on their side provides little support in the context of Missouri’s statutory scheme.
Indeed, upon closer analysis of the decisions cited by the Retirement Systems, it becomes strikingly clear that those systems were set up far differently than here, primarily in the area of financial and political control by the state. See Ernst v. Rising, 427 F.3d 351, 359-60 (6th Cir.2005) (holding Michigan’s retirement system for state-court judges was an arm of the state because the state would be liable for any judgment against the system, the state had “extensive and detailed control over the retirement system,” a majority of board members were appointed by the governor, and the system’s operations had more in common with a traditional state function than a local one); McGinty v. New York, 251 F.3d 84, 97, 99-100 (2d Cir.2001) (concluding Eleventh Amendment immunity existed where the state made significant payments each year to the retirement system and the state would become responsible for judgments against the system); Fitzpatrick v. Bitzer, 519 F.2d 559, 565 (2d Cir.1975), rev’d on other grounds, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (determining the retirement fund was an arm of the state where the state was required to appropriate funds annually and pay retirement income payments, and thus a judgment against the fund would automatically increase the obligations of the state treasury); W. Va. Inv. Mgmt. Bd. v. Residential Accredited Loans, Inc., No. 2:10-cv-461, 2010 WL 3418314, at *2-4 (S.D.W.Va. Aug. 26, 2010) (finding the investment board was an arm of the state where its funds were transmitted through the state and the board was composed of state officials and ten members appointed by the governor); Mo. State Employees’ Ret. Sys. v. Credit Suisse, N.Y. Branch, No. 09-4224-CV-C-NKL, 2010 WL 318652, at *6 (W.D.Mo. Jan. 21, 2010) (concluding the Missouri State Employees’ Retirement System was an arm of the state where the state was statutorily obligated to contribute to the system’s budget and the majority of the board was comprised of state officials); N.M. ex rel. Nat’l Educ. Ass’n of N.M., Inc. v. Austin Capital Mgmt. Ltd., *838 671 F.Supp.2d 1248, 1253 (D.N.M.2009) (considering an educational retirement board to be an arm of the state where it was composed primarily of state officials or those appointed by the governor and the state treasurer was the custodian of the fund, with disbursements from the fund made through the state); Cal. Pub. Employees Ret. Sys. v. Moody’s Corp., Nos. C 09-03628 SI, C 09-03629 JCS, 2009 WL 3809816, at *3 (N.D.Cal. Nov. 10, 2009) (determining a retirement fund was an arm of the state where the state had substantial fiscal obligations to the fund, including an obligation to contribute annually to the fund and pay any shortfall in its funding); Turner v. State of Ind. Teachers’ Ret. Fund, No. 1:07-cv-1637-DFH-JMS, 2008 WL 2324114, at *3 (S.D.Ind. June 5, 2008) (concluding a retirement fund was an arm of the state where the state assembly allocated money to the retirement fund on an annual basis and the state bore the ultimate responsibility for maintaining sufficient money in the fund to cover the state’s liability to its members); JMB Group Trust IV v. Penn. Mun. Ret. Sys., 986 F.Supp. 534, 537-38 (N.D.Ill.1997) (determining the retirement system was an arm of the state where all board members were state officials or were appointed by the governor, and thus declining to reach the financial considerations); Kan. Pub. Employees Ret. Sys. v. Boatmen’s First Nat’l Bank of Kansas City, 982 F.Supp. 806, 808-09 (D.Kan.1997) (finding the retirement system was not autonomous, in part, because all board members were appointed by the governor and the state treasurer retained custody of its funds, and the state would benefit from a judgment in favor of the system in light of the Kansas Supreme Court’s determination that a recovery would benefit the state); Hair v. Tenn. Consol. Ret. Sys., 790 F.Supp. 1358, 1361, 1364 (M.D.Tenn.1992) (stating “[a]s with ... other cases, the determination in the instant case comes down to whether a judgment would come from the funds of the [retirement system] or would require a special appropriation from the General Assembly,” and concluding the state would be liable); Mello v. Woodhouse, 755 F.Supp. 923, 926 (D.Nev. 1991) (“In this case a decree against defendants would operate against Nevada because forcing defendants to perform under the contract would require Nevada to expend money from its state treasury. Thus, in this case, the suit is, in effect, a suit against Nevada.”); 21 Props., Inc. v. Romney, 360 F.Supp. 1322, 1326 (N.D.Tex.1973) (holding the retirement system was an alter ego of the state where any money judgment rendered against the system would have to be satisfied out of public money, which would directly affect the state treasury).
In sum, contrary to supporting their argument, these decisions actually favor the determination that the Retirement Systems are not arms of the State because Missouri’s statutory scheme unquestionably provides the Retirement Systems with far more independence than those systems cited above. See Scott v. Pub. Sch. Ret. Sys. of Mo., No. 09-4241, 2010 WL 3749210, at *6 (W.D.Mo. Sept. 21, 2010) (“PSRS is more autonomous than most public retirement systems.”). Looking at the factors as a whole, I agree with State Street that PSRS enjoys broad legal, fiscal, and operational autonomy separate and part from the State, and thus it is not an arm of the State. Accordingly, I would conclude the Retirement Systems are citizens for diversity jurisdiction purposes.
II
Because I would conclude the Retirement Systems are not arms of the State, and therefore are citizens for diversity ju *839 risdiction purposes, I would reach the merits of the forum-selection clause question.

. The majority's sole authority for its proposition that Missouri courts have referred to the Retirement Systems as state agencies is Savannah R-III School District v. Public *836 School Retirement System of Missouri, 912 S.W.2d 574, 575 (Mo.Ct.App.1995), a per curiam opinion involving a dispute about whether the salary rate of Public School Retirement System members includes fringe benefits. The question of whether the Retirement System was a state agency was never discussed in Savannah, and the issue was only peripherally referenced by the court in deciding whether to accord the Retirement System deference in its interpretation of a state statute concerning salary rates. 912 S.W.2d at 576-77. Therefore, whatever can be gleaned from Savannah has very little, if any, application to the instant question of whether the Retirement Systems are arms of the State, particularly in light of the express statutory language discussed above providing the Retirement Systems with independence from the State in their operations.