[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11813

_____

D.C. Docket No. 2:13-cv-00934-DAB

GWENDOLYN MCCURDY,

Plaintiff-Appellant,

versus

STATE OF ALABAMA DISABILITY DETERMINATION SERVICE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(October 23, 2018)

Before WILLIAM PRYOR and MARTIN, Circuit Judges, and VRATIL,* District
Judge.

VRATIL, District Judge:

_____

*Honorable Kathryn H. Vratil, United States District Judge for the District of Kansas,
sitting by designation.

Gwendolyn McCurdy sued the State of Alabama Disability Determination Service ("DDS") for race discrimination in promotions and termination of employment in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.[1]  The District Court granted summary judgment to DDS.  McCurdy appeals that order, along with its denial of her motion to strike the supporting affidavit of Norman Ippolito.  After careful review, and with the benefit of oral argument, we affirm.

## I.  STANDARD OF REVIEW

We review a grant of summary judgment <u>de novo</u>, applying the same legal standards as the District Court.  <u>Alvarez v. Royal Atl. Developers, Inc.</u>, 610 F.3d 1253, 1263 (11th Cir. 2010).  Summary judgment is appropriate only if the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We view all the evidence in the light most favorable to McCurdy and draw all reasonable inferences in her favor.  <u>Flowers v. Troup Cty., Ga., Sch. Dist.</u>, 803 F.3d 1327, 1335 (11th Cir. 2015).  But an inference is not "reasonable" and a dispute is not "genuine" if it is based on conclusory allegations and speculation.  <u>Black v. Wigington</u>, 811 F.3d

---

[1]    On September 30, 2015, the District Court granted DDS's motion to dismiss McCurdy's sex, age and national origin discrimination claims for failure to exhaust administrative remedies.  The District Court also dismissed McCurdy's hostile work environment and retaliation claims for failure to state a claim, and dismissed her Americans with Disabilities Act claim because she abandoned it.

2

1259, 1265 (11th Cir. 2016).  Further, "[m]ere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment."  Bald Mtn. Park, Ltd. v. Oliver, 863 F.2d 1560, 1563 (11th Cir. 1989) (footnote omitted).  To oppose a properly supported summary judgment motion, McCurdy had to "come forward with specific factual evidence, presenting more than mere allegations."  Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).  The above standard applies in job discrimination cases just as in other cases.  See Chapman v. AI Transp., 229 F.3d 1012, 1025-26 (11th Cir. 2000).

## II.  BACKGROUND

As we write only for the parties, we assume familiarity with the underlying facts and only recount what is necessary for resolution of this appeal.

DDS employed McCurdy, a Black female over the age of 40, as a disability specialist.  McCurdy alleges that from some time before 2000 until her termination in 2012, she performed her duties in an "exemplary and highly competent manner" and that prior to 2010, she received positive performance ratings.  The record, however, shows that on multiple occasions McCurdy received negative performance reviews and failed to meet DDS standards.  In 2011, Beth Jones, Tommy Warren and Ippolito became McCurdy's direct supervisors.  During this time, McCurdy's performance evaluations declined.  McCurdy alleges that this decline resulted from racial discrimination.

3

McCurdy also claims that DDS promoted White employees to senior disability specialist positions while it did not promote her.  She further alleges that Jones gave her a higher case load than other employees.

Prior to termination, McCurdy received a "Notice of Pre-Termination Action."  The notice informed McCurdy that Ippolito had recommended that her employment be terminated due to noncompliance with rules and failure to properly perform job duties.  McCurdy received a hearing on July 27, 2012.  She did not attend the hearing and ALSDE terminated her employment effective August 15, 2012.  On November 6, 2012, McCurdy filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that in 2006, she had filed an EEOC charge of failure to promote; that in 2011, DDS placed her on a six-month probation with a Performance Improvement Plan; that DDS assigned her to work for White supervisors with histories of terminating Black employees; that she received more cases than White employees; and that Ippolito told her that the reason for termination was lack of production.  She further stated, "I have no knowledge of a similarly situated White employee who is still employed."

After the EEOC issued McCurdy a right-to-sue letter, she filed this lawsuit. DDS filed a motion for summary judgment, supported by Ippolito's affidavit, on McCurdy's remaining claims: race discrimination under Section 1981 and

4

Title VII based on (1) failure to promote and (2) termination of employment.[2]

McCurdy filed a motion to strike the affidavit. On March 17, 2017, the District Court denied McCurdy's motion to strike and granted summary judgment in favor of DDS on the remaining claims. McCurdy appealed.

## III.  DISCUSSION

Our discussion of this appeal is divided into three parts. First, we address McCurdy's motion to strike the Ippolito affidavit. Second, we address whether DDS is entitled to Eleventh Amendment immunity on McCurdy's Section 1981 claims. Finally, we address the merit of McCurdy's discrimination claims under Title VII.

A.    Ippolito Affidavit

McCurdy appeals the District Court's denial of her motion to strike the Ippolito affidavit. DDS employed Ippolito in various positions for 42 years, and he was director of DDS when he recommended termination of McCurdy's employment in July 2012. His 13-page affidavit covered several topics, including how DDS conducted work evaluations, performance reviews for McCurdy and DDS's decision to terminate her employment.

---

[2]    The District Court separately considered whether McCurdy could assert claims based on allegations that because of race, DDS (1) gave her unfavorable job duties and assignments, (2) disciplined her and/or fabricated her disciplinary history, and (3) gave her negative performance evaluations. Because McCurdy did not allege adverse employment action other than termination, we evaluate these allegations as part of her employment termination claim. See Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1241-42 (11th Cir. 2001) (negative evaluations and reassignment of job tasks alone typically not materially adverse actions).

The parties noticed the depositions of McCurdy and Ippolito for July 22, 2016.  After McCurdy's deposition concluded, Ippolito offered to stay as long as necessary to complete his deposition.  McCurdy's counsel indicated that he did not want to proceed with Ippolito's deposition that day and suggested July 29, 2016 – the last day of discovery – as an alternative date.  Ippolito told McCurdy's counsel that he was not available on July 29.  McCurdy's counsel did not suggest an alternative date for Ippolito's deposition, but McCurdy's counsel said that he would take Beth Jones's deposition on July 29.

More than two months later, on October 11, 2016, DDS filed an affidavit from Ippolito in support of its motion for summary judgment.  McCurdy asked the District Court to strike the affidavit because Ippolito had failed to appear at the deposition on July 29.  The District Court denied the motion to strike, finding that McCurdy had not timely filed an objection or a motion to compel Ippolito's deposition.

We review the District Court's ruling for abuse of discretion.  Jefferson v. Sewon Am., Inc., 891 F.3d 911, 919 (11th Cir. 2018).  To demonstrate an abuse of discretion, McCurdy must show that the District Court's "decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact."  Furcron v. Mail Ctrs. Plus, LLC, 843 F.3d 1295, 1304 (11th Cir. 2016) (quoting United States v. Westry, 524 F.3d 1198, 1214 (11th Cir.

6

2008)) (further citations omitted).

On appeal, McCurdy argues that the District Court erred because she had no opportunity to "object" to Ippolito's affidavit before DDS filed its summary judgment motion. McCurdy's argument misses the point. The District Court's order is best understood in the context of McCurdy's failure to timely object to Ippolito's failure to appear at his deposition on July 29, and her failure to seek to compel his deposition – not McCurdy's failure to object to the actual affidavit. The District Court did not err in holding that before seeking to strike Ippolito's affidavit, McCurdy should have pursued remedies available under Fed. R. Civ. P. 37. In addition, even after DDS filed its motion, McCurdy could have sought leave to depose Ippolito under Fed. R. Civ. P. 56. Because McCurdy did not timely invoke available remedies to compel Ippolito's deposition testimony, the District Court did not abuse its discretion in refusing to strike his affidavit.

B.    Sovereign Immunity

The District Court held that DDS is entitled to Eleventh Amendment immunity on McCurdy's claims under Section 1981. Under the Eleventh Amendment, a nonconsenting state may not be sued for damages in federal court unless the state voluntarily waives its immunity or Congress clearly abrogates it. See Hans v. Louisiana, 134 U.S. 1, 14-17 (1890); Cross v. Alabama, 49 F.3d 1490, 1502 (11th Cir. 1995). While Congress has abrogated immunity for money

7

damages suits brought under Title VII, <u>Fitzpatrick v. Bitzer</u>, 427 U.S. 445, 447-48 (1976), it has not abrogated Eleventh Amendment immunity for claims brought under Section 1981, by and through the remedial vehicle of Section 1983.[3] <u>Quern v. Jordan</u>, 440 U.S. 332, 345 (1979); <u>Carr v. City of Florence, Ala.</u>, 916 F.2d 1521, 1525 (11th Cir. 1990). It is well-settled that an arm of the state, which includes state instrumentalities and agents, may invoke Eleventh Amendment immunity. <u>Manders v. Lee</u>, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc).

To determine whether an entity is an arm of the state, we consider four factors: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." <u>Id.</u> at 1309. We analyze these factors "in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." <u>Id.</u> at 1308 (citing <u>Shands Teaching Hosp. & Clinics v. Beech St. Corp.</u>, 208 F.3d 1308, 1311 (11th Cir. 2000)). The function at issue here is DDS's role as an employer and its decisions related to McCurdy's employment. <u>See</u> <u>Ross v. Jefferson Cty. Dep't of Health</u>, 701 F.3d 655, 660 (11th Cir. 2012) (where plaintiff sues for wrongful termination, "function" at issue is termination of employment).

As noted above, the District Court held that DDS is entitled to immunity as

---

[3]    Any claim for a violation of Section 1981 must be brought through the remedy provided in 42 U.S.C. § 1983. <u>Jett v. Dallas Ind. Sch. Dist.</u>, 491 U.S. 701, 731-32 (1989).

an arm of the state.  Because our review of a legal finding of immunity is plenary, we independently analyze whether DDS is an arm of the state with no deference to the District Court's decision.  See U.S. ex rel. Lesinkski v. South Fla. Water Mgmt. Dist., 739 F.3d 598, 602 (11th Cir. 2014).  For reasons stated below, we hold that under Manders, DDS is an arm of the state entitled to immunity.

1.      How State Law Defines the Entity

The first factor considers how Alabama law defines DDS and weighs in favor of immunity if the entity's authority to make personnel decisions derives from the state.  Pellitteri v. Prine, 776 F.3d 777, 780 (11th Cir. 2015).  The District Court held that under Alabama law, DDS acts as a state agency when it implements its organizational structure, makes personnel decisions and evaluates Merit System employees and that this factor weighs "heavily" in favor of immunity.

Alabama law defines DDS as either a state agency or a division of the Alabama State Department of Education ("ALSDE").  See Ala. Code § 16-2-3 (1975) (ALSDE organized into divisions and services); id. at § 36-26-65 (referring to "Disability Determination Division of the State Department of Education").  In addition, Alabama law states that DDS employees are "in the classified service of the state" and receive state Merit System benefits.  Ala. Code § 36-26-65(3).

Alabama initially created DDS to fulfill a mandate under the Social Security

Act ("SSA") which directs states to designate a "State agency" to make disability determinations. 42 U.S.C. § 421(a)(1)-(2). Federal law also directs states to provide organizational structure and personnel for making disability determinations. 20 C.F.R. § 404.1620(a); see also 20 C.F.R. § 404.1620(c) (state required to designate claims examiners). The fact that Alabama selected DDS as the "State agency" to fulfill its obligations under the SSA is compelling evidence that it considers DDS a state agency.

Because Alabama views DDS as either a state agency or a division of ALSDE, DDS's authority over personnel decisions derives from the state. As a result, we agree with the District Court that this factor weighs in favor of finding that DDS is entitled to immunity.

2.    The State's Degree of Control

The second factor calls us to consider the degree of control which Alabama maintains over DDS. See Manders, 338 F.3d at 1320. The District Court found that ALSDE directly and substantially controlled the employment, evaluation and termination of DDS employees.

The record shows that DDS used State of Alabama personnel forms for McCurdy's annual performance reviews. Although Ippolito recommended termination of McCurdy's employment, the State Superintendent of Education is the final decisionmaker for DDS personnel decisions and he signed McCurdy's

10

termination notice.  Finally, McCurdy appealed her employment termination to the Alabama State Personnel Board and she received a hearing before a State Personnel Department Administrative Law Judge.[4]  Thus, we agree with the District Court that the second factor weighs in favor of immunity.

3.    Source of Funds

The third factor evaluates the source of the entity's funding.  See id. at 1323. When the state funds the entity, it weighs in favor of immunity.  Id. at 1324.  The District Court found that DDS receives funds exclusively from the United States Treasury under 20 C.F.R. § 404.1626(a)-(d) and, accordingly, that this factor weighs against immunity.

Federal regulations require federal funds for both disability awards and state administrative costs such as salaries, and do not allow states to incur expenses beyond budgeted amounts without approval.  20 C.F.R. § 404.1626(a)-(d).  The state is not the source of DDS funds and does not control the DDS budget.  Thus, we agree with the District Court's determination that this factor weighs against immunity.

4.    Responsibility for Adverse Judgments

The fourth and final factor requires us to consider who will be responsible

---

[4]    McCurdy argues that school boards, which are not protected by the Eleventh Amendment, have a closer relationship to ALSDE than DDS does.  This argument is unavailing. Unlike school boards, DDS is not an autonomous entity.  DDS personnel decisions are subject to ALSDE oversight, with the State Superintendent of Education as the final decisionmaker.

for an adverse judgment against DDS.  See Manders, 338 F.3d at 1324.  "A showing that the state would be liable for judgment militates with particular force in favor of holding Eleventh Amendment sovereign immunity to protect the defendant from suit in federal court; a showing that the state would not be liable cuts strongly against such immunity."  Id. at 1346 (Barkett, J., dissenting) (citing Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 430 (1997), and Auer v. Robbins, 519 U.S. 452, 456 n.1 (1997)).

The District Court concluded that a judgment against DDS would implicate the state's integrity because DDS is federally funded and no federal funds would be available to pay for an adverse judgment.  In applying this factor, the District Court focused primarily on which entity would *actually* pay for an adverse judgment.  The relevant inquiry, however, is *potential* legal liability.  Analysis of this factor should not be influenced by whether an adverse judgment could in fact be satisfied against the state.  The proper focus is whether liability would fall to the state.  See Regents, 519 U.S. at 431 (full indemnity by federal government did not affect university immunity); Manders, 338 F.3d at 1327 (actual drain on state treasury not per se condition of Eleventh Amendment immunity).  Here, even if federal funds would reimburse DDS for paying an adverse judgment, a judgment against DDS would subject Alabama (through ALSDE) to legal liability.  Accordingly, we agree with the District Court that this factor weighs in favor of

12

immunity.

### 5.    Balancing

In balancing the four factors, DDS is properly considered an arm of the state because (i) state law defines it as a state agency or a division of a state agency and its authority as an employer derives from the state, (ii) the state exercises significant control over DDS personnel decisions and (iii) although it derives its funds from the federal government, the state would bear responsibility for a judgment against DDS.

For these reasons, we affirm the District Court's holding that DDS is an arm of the state and entitled to Eleventh Amendment immunity on McCurdy's Section 1981 claims.

## C.    Title VII

We now turn to McCurdy's claims under Title VII.[5]  McCurdy alleges that because of race, DDS (1) failed to promote her and (2) terminated her employment. See supra note 2.  On her failure to promote claim, the District Court held that McCurdy established a prima facie case but could not demonstrate that DDS's stated reasons for failure to promote were pretextual.  On her termination claim,

---

[5]     Because Congress has expressly abrogated Eleventh Amendment immunity for suits brought under Title VII, our grant of immunity to DDS on McCurdy's Section 1981 claims does not dispose of her Title VII claims.

13

the District Court held that McCurdy did not establish a prima facie case because she did not show that DDS treated any similarly situated employee more favorably or replaced her with a person outside of her protected class.

Although our reasoning and analysis differ slightly, we hold that the District Court properly construed the facts in the light most favorable to McCurdy and did not err in granting summary judgment to DDS on her Title VII claims. See Kernel Records Oy v. Mosley, 694 F.3d 1294, 1309 (11th Cir. 2012) (we may affirm district court decision on any ground supported by record).

Title VII prohibits an employer from racially discriminating against an employee in hiring, termination of employment or terms or conditions of employment. 42 U.S.C. § 2000e-2(a)(1). Because McCurdy did not offer direct evidence of discrimination, the District Court properly analyzed her claims under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Under McDonnell Douglas, McCurdy had the initial burden of establishing a prima facie case of discrimination on each of her claims. Once McCurdy satisfied her initial burden, the burden of production shifted to DDS to produce a reason for the adverse employment action that was legitimate and nondiscriminatory. See id. at 802-03. This burden is "exceedingly light." Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 770 (11th Cir. 2005) (quoting Perryman v. Johnson Prods. Co., 698

14

F.2d 1138, 1142 (11th Cir. 1983)).  McCurdy then had to show that DDS's proffered reason was pretext for race discrimination.  Vessels, 408 F.3d at 771.

To show pretext, McCurdy must have demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  Alvarez, 610 F.3d at 1265 (citation omitted).  We are not concerned with whether DDS's decision was prudent, fair or based on correct information; we are concerned solely with whether its decision was motivated by racial animus.  See Chapman, 229 F.3d at 1030.  Moreover, McCurdy at all times had the ultimate burden of showing intentional discrimination.  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

1.    Failure to Promote

McCurdy claims that DDS unlawfully discriminated against her by failing to promote her to senior disability specialist.  McCurdy provided eligibility certificates which show that during the time she was promotion-eligible, three White candidates with lower grades received promotions.  The District Court found that these certificates created a prima facie case that (1) McCurdy was qualified for the position, (2) she was not promoted and (3) qualified employees outside her protected class were promoted.  Applying the McDonnell Douglas

15

framework, the District Court required DDS to produce a nondiscriminatory reason for not promoting McCurdy. DDS stated that during the time McCurdy was eligible for promotion, she was just partially meeting standards and did not receive a recommendation from her supervisor, while other candidates were meeting standards and had received recommendations.[6] Although McCurdy argues that she refuted this "erroneous information" with a letter which she sent to the director of DDS in 2005, her letter only evidences a personal belief that she was meeting standards and deserved promotion. McCurdy's letter did not create a genuine issue of material fact whether DDS's stated reasons for failure to promote were racially motivated. In addition, even if McCurdy had shown that her employment rating records were erroneous, this fact alone would not be evidence of pretext. See Flowers, 803 F.3d at 1338; Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984).

McCurdy did not demonstrate a genuine issue of material fact whether DDS's stated reasons for failure to promote were pretextual. Thus, the District Court did not err in granting summary judgment to DDS on this claim.

2.    Termination

McCurdy claims that DDS unlawfully terminated her employment based on

---

[6]    McCurdy's own evidence undermines her claim that DDS did not promote her because of race – her brief states that DDS promoted other Black employees during her tenure with DDS.

16

performance evaluations that were negative on account of race.  The District Court

held that DDS was entitled to summary judgment on this claim because McCurdy

did not identify a valid comparator whom DDS treated more favorably and she

thus failed to establish a prima facie case.  The District Court did not address

whether McCurdy had presented other circumstantial evidence that could give rise

to an inference of discrimination.  See Holifield v. Reno, 115 F.3d 1555, 1562

(11th Cir. 1997) (where no comparator, summary judgment appropriate unless

other evidence of discrimination).  We need not evaluate whether McCurdy

established a prima facie case based on other evidence of discrimination, however,

because she has not shown that DDS's stated reason for terminating her

employment was a pretext for illegal race discrimination.  See id. at 1565 (ultimate

issue is whether plaintiff has proven intentional discrimination because of race).

DDS's stated reason for firing McCurdy was poor job performance.

Specifically, DDS stated that McCurdy failed to follow agency and SSA policy,

which resulted in significant delays in processing cases.  McCurdy argues that

performance review ratings, audits and case assignments are susceptible to

discriminatory manipulation, but she offers no evidence that DDS actually

manipulated them.  In addition, McCurdy does not offer evidence of material

17

inaccuracies in her personnel record.[7]  See Leigh v. Warner Bros., Inc., 212 F.3d

1210, 1217 (11th Cir. 2000) (no probative value to conclusory allegations without

supporting facts) (citing Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir.

1985)).  Moreover, even if McCurdy could show mistakes in her job evaluations,

mistakes alone would not be sufficient to create a genuine issue of material fact as

to pretext.  See Alvarez, 610 F.3d at 1266 (accuracy of employer's conclusion that

employee's performance was unsatisfactory not relevant; sole concern is whether

unlawful discriminatory animus motivated decision); see also Rojas v. Florida, 285

F.3d 1339, 1342 (11th Cir. 2002) ("[W]e must be careful not to allow Title VII

plaintiffs simply to litigate whether they are, in fact, good employees.").  McCurdy

did not demonstrate a genuine issue of material fact whether DDS terminated her

employment because she failed to meet DDS performance standards.  Conclusory

allegations of bias, or that DDS manipulated her evaluations, do not create a

genuine issue of material fact regarding whether DDS's stated reason for

---

[7]    McCurdy argues that her pre-termination notice contained errors and misinterpretations.  Specifically, she asserts that the notice erroneously stated that she had been subject to prior disciplinary actions when she had only been subject to counseling and appraisal ratings, which she contends do not constitute "discipline."  The record reveals that McCurdy did not have "disciplinary actions" on her Form 3 Employee Performance Appraisal for 1/1/10 to 1/1/11, but that she failed to meet standards for that year.  In the pre-termination notice, however, the State Superintendent listed her failure to meet standards under the heading "A review of your past disciplinary history indicates you received the following disciplinary actions."  This appears to be an argument over semantics.  The pre-termination notice may define "disciplinary action" more broadly than the Form 3 Performance Appraisal, but this is not evidence of pretext.

termination was a pretext for illegal discrimination.  We affirm the grant of summary judgment to DDS on this claim.

## IV.  CONCLUSION

For the reasons above, we **AFFIRM** the judgment of the District Court.